[Kelly *et al.* v. Karsner.]

# Kelly *et al. v.* Karsner.

### *Bill in Equity to Enforce Vendor's Lien on Land.*

1. *Vendor's lien; recital of payment in conveyance.*—A recital of payment of the consideration, in the conveyance to the purchaser, neither waives nor destroys the vendor's lien, if it is in fact not paid; but it is *prima facie* evidence of payment, and must be explained or disproved by the vendor seeking to enforce a lien; and if a payment in money is recited, when no money was in fact paid, the *onus* is on the defendant to show the payment, by agreement, of some other valuable consideration.

2. *Same.*—Where the deed recites a payment by defendants (the grantees) of the consideration in money, while the proof shows the real consideration was a conveyance made by the defendants of a tract of land to a third party, by which such third party was induced to make a purchase of other lands of complainant, and the transaction between the complainant and defendants was conducted by their father, who was authorized by complainant to make the sale to such third party, and collect and use the money paid by him, both for complainant's land and that conveyed to him by defendants, for a particular purpose, the complainant can not assert a vendor's lien against the defendants on account of the father's misappropriation of the money received by him for the land conveyed by defendants.

APPEAL from the Chancery Court of Madison.

Heard before the Hon. S. K. McSPADDEN.

This was a bill by the appellee, Eliza J. Karsner, against the appellants, Joseph B. Kelly and Fleming J. Kelly, to enforce a vendor's lien for purchase-money on 109 acres of land.

The complainant and defendants were the children of Russell Kelly. In 1874, Russell Kelly and his wife, Keziah W. Kelly, agreed to separate, upon the terms that he was to relinquish all his rights in her lands in Tennessee, and she was to convey to him a tract of land embracing the said 109 acres involved in this suit. At the instance of Russell Kelly, who was in debt, Keziah W. Kelly, in carrying out this agreement, conveyed the land to the complainant, Eliza J. Karsner, who was not present at the time and had no knowledge of the transaction. When the deed from Keziah W. Kelly to the complainant was written, Russell Kelly directed a money consideration of $1,000.00 to be inserted in it, which was no part of the previous agreement between him and Keziah W. Kelly. It was agreed between the parties to this suit, that complainant thus acquired her title to the tract of land of

which the 109 acres involved in this suit are a part. On December 14, 1874, complainant deeded said 109 acres to the defendants. As to the consideration of this conveyance, the parties wholly disagree. The contradictory versions of the transaction, as given by the complainant and the defendants, and the material testimony relating thereto, are stated in the opinion.

After the death of Russell Kelly in 1879, the complainant claimed the land so deeded to her by Keziah W. Kelly, except the said 109 acres, as her own, and her brothers, the defendants, filed a bill against her to enforce an alleged trust in said lands, which she successfully resisted.—See *Kelly v. Karsner*, 72 Ala. 106.

In the present suit the court below rendered a decree in favor of the complainant, and this is assigned as error.

CABANISS & WARD, and R. W. WALKER, for appellant.—It is true that Russell Kelly's intent to defraud his creditors in having the conveyance of the lands made to complainant, forfeited his right to hold her to the terms of the secret trust (*Kelly v. Karsner*, 72 Ala. 106); but it did not prevent her from recognizing and executing the trust in whole or in part. Her execution of the conveyance to defendants in consideration of their conveyance of land to Mooring, and instructing Mooring to pay the purchase money to Russell Kelly, bind her. If the land had been complainant's undisputedly, and she allowed her father, as her agent, to sell parts of it, she would be bound by the sale.

JOHN D. BRANDON, *contra.*

CLOPTON, J.—The bill, which is filed by appellee, seeks to enforce a vendor's lien on one hundred and nine acres of land, conveyed by her to appellants, December 14, 1874, which constituted a part of about 1100 acres conveyed in October, 1874, by Keziah Kelly to complainant. The decree rendered in the former suit between these parties, on final hearing on pleadings and proof, dismissing the bill, which was affirmed by this court on appeal, is *res adjudicata* as to all the issues decided or necessarily involved in that suit, except as to the matters put in issue by the cross bill of complainant, which was dismissed without prejudice, being the same matters in issue in this suit. As it was therein decided, that the conveyance from Mrs. Kelly to complainant was not made in trust, either express or resulting, the issues to be now determined will be simplified by eliminating all questions merely relating to the trust character of

the conveyance, and considering the case on the hypothesis that complainant had the absolute title disencumbered of any trust; and on the same principles as if the transaction had been between a vendor and vendee, unaffected by any antecedent understandings or agreements.

The version of the transaction as given by complainant is, that in December, 1874, she sold and conveyed to the defendants the land in controversy for seven hundred and twelve dollars, at the suggestion of her father, Russell Kelly, in order to raise money to pay one thousand dollars, which she had agreed to pay Mrs. Kelly for the lands conveyed by her; that the purchase money was to have been paid on the delivery of the deed, but in fact has never been paid, and that the recital of the deed in this respect is untrue. The version of the defendants is, that they conveyed to Mooring about forty acres of land belonging to them, and complainant conveyed to them the land in controversy in pursuance and performance of an agreement between them and Russell Kelly, that if they would make a deed to the forty acres, he would procure from complainant in compensation therefor, and in consideration thereof, a conveyance of the land in controversy. The defendants, admitting they have never paid Mrs. Kelly or complainant any money, deny any such promise or liability, and aver that they paid the consideration price agreed on, which is not truly stated in the deed. One of the defendants was in possession of the land when the deed was made, and had been sometime previously, but it is unnecessary to decide by what asserted right or under what authority. We shall assume he was in possession by permission of Mrs. Kelly and complainant. We have thus stated the respective versions of the parties, divested of the extraneous and irrelevant circumstances set forth in the answer, and in respect to which both parties took evidence, in order to ascertain the real issues involving the merits of the contention.

The vendor's lien does not depend on any special agreement nor specific intention of the parties. It arises on equitable principles from the contract of sale and a conveyance, and a refusal or failure to pay the agreed price. While the settled rule is, that a recital of payment in the deed does not waive, nor destroy the lien, which equity creates for the protection of the vendor, such recital is *prima facie* evidence of payment, requiring complainant to explain or disprove. Also, the recital of a particular consideration, is *prima facie* evidence that such is the real consideration, and casts on defendants the *onus* to show, that

something other than money was agreed to be taken in payment. Though it is not permissible to show a consideration different in kind from that expressed, parol evidence is admissible to show when the deed recites a valuable consideration, that something of value, other than that recited, was agreed to be, and was received. The limitation is, that the character of the consideration recited and of that proved shall not vary in kind, but may vary in degree. *Pique v. Arendale*, 71 Ala. 91; *Pettus v. Roberts*, 6 Ala. 811. The conveyance opens to proof and investigation the facts and the true nature of the transaction.

The complainant and her husband, and both defendants, were examined to prove their respective versions. They unequivocally and unreservedly contradict each other as to all material facts and admissions. Their testimony is utterly irreconcilable. If dependent on their evidence, the mind could not repose with satisfaction of having come to the truth. They sustain to the case equal relations of self-interest; and no reasons are disclosed, why credence should be given to the testimony of either more than that of the other, except as sustained by the evidence of disinterested witnesses, and corroborating undisputed facts, on which the court, in such case, may rely with confidence for the ascertainment of the truth. Only two other witnesses are examined, who are shown to have knowledge of the particular and immediate transaction. Mooring, who contracted for the purchase of two pieces of land—one owned by complainant, and the other by defendants—states in substance, that on his saying to Russell Kelly, who had sent for him with a view to sell him some of the land conveyed to complainant, that he would like to buy some timbered land belonging to defendants, Joseph Kelly was sent for to be consulted. He at first refused to convey, saying he had done all he intended to do; but did agree to do so, upon being assured by his father, that complainant would make him a deed to the land on which he then resided, being the land in controversy. Complainant, who resided at a distance, was sent for, and on being informed, ratified the trades, remarking that she was willing to let the land go, that her father might get money to pay Mrs. Kelly. After her return home, a conveyance was prepared, sent to her, executed, and returned to her father; and on delivery of the deed, and also a deed from the defendants Mooring paid her father the purchase price for both tracts of land. Taylor, the other witness, drafted the several deeds. He states that in the deed from complainant to defendant, the consideration was left in blank to be after-

wards filled by agreement, the parties considering it immaterial, and that the only consideration really involved was the conveyance by defendants to Mooring of a part of their land. Complainant admits in her testimony, that the deed to the defendants was sent to her, signed by her and her husband, and returned to her father with instructions to collect the money, and pay it to Mrs. Kelly, in pursuance of an agreement she had made, and that she left the matter of selling the land to her father.

Unless the evidence of Mooring and Taylor is discredited, we are forced to the conclusion, that Russell Kelly was authorized by complainant to sell some of the land to obtain money to pay Mrs. Kelly, with authority to collect it and pay it over; that to effect a sale to Mooring he procured the assent of defendants to convey to him a part of their timbered land, and receive in exchange therefor a conveyance to the land in controversy; that the deeds to Mooring and the defendants were executed by complainant in pursuance and completion of this arrangement, and that Mooring was to pay Russell Kelly the purchase-money for both tracts of land conveyed to him, which he did. We fail to see in what respect this version of the transaction necessarily depends on an antecedent trust. The matters relating thereto set forth in the answer seem to have been stated as matter of inducement, for the purpose of showing why the father undertook to dispose of some of the land, and on which to base an inference, that complainant voluntarily executed the trust *pro tanto.* Whether or not such trust existed, the proof convincingly shows, that her father was authorized to sell the land, and receive the money. Such being the transaction, it is evident that no debt is due to complainant, contracted in the purchase of the land, for which the defendants were ever liable to a suit and recovery at law. The money paid by Mooring for the land conveyed by defendants was a substitute for the purchase price of the land conveyed by complainants to them, so that no debt for the price existed. Without a debt or liability, the consideration of land sold and conveyed, no lien can arise. And equity will not create a lien for the protection of complainant on the ground of her father's misappropriation of the money, which she authorized him to collect.—*Thomason v. Cooper*, 57 Ala. 560; 3 Pom. Eq. Jur. § 1252.

Reversed and decree rendered dismissing the bill.