# Jackson *v.* Stanley.

### Bill in Equity to enforce Vendor's Lien on Land.

1. *Waiver of vendor's lien* —A vendor's lien on land for the unpaid purchase-money is presumptively waived by the acceptance of any distinct and independent security, such as the note or bond of a third person, or of the purchaser himself with personal security, or a mortgage on other lands, or a pledge of stock as collateral security; but it is in each case a question of intention, in determining which all the facts and attendant circumstances should be considered.

2. *Same; acceptance of husband's notes for purchase-money, on sale to wife.*—When the contract is negotiated by the husband as the agent of the wife, and the conveyance is executed to her, the acceptance of his notes for the purchase-money is not, under our decisions, a presumptive waiver of the vendor's lien; but it is a circumstance, of more or less weight, to be considered in connection with the other facts and circumstances of the particular case.

3. *Same; pledge of stock as collateral security.*—A pledge of stock in a private corporation, as collateral security for the purchase-money, is

[Jackson v. Stanley.]

presumptively a waiver of the vendor's lien; and though the transfer afterwards proves to be invalid, no fraud being practiced, this does not affect the question of intended waiver; as where the stock belongs to the wife, who is the purchaser, and the transfer is not effectual to convey her interest.

4. *Retention of lien by agreement; case at bar.*—Though a vendor's lien is presumptively waived by the acceptance of independent or collateral security, this presumption may be rebutted and overcome by proof of an oral agreement or understanding that it was retained; but the *onus* of establishing such agreement is on the vendor, who asserts it; and it is not established by the evidence in this case, against the uncontroverted facts and the face of the writings.

5. *Husband's admissions, as evidence against wife.*—When the contract of sale is negotiated by the husband for the benefit of the wife, and the conveyance is executed to her, though his notes are given for the purchase-money, his subsequent admissions or declarations, when pressed for payment, that the vendor had retained a lien on the land, are not competent or admissible as against the wife.

APPEAL from the Chancery Court of Chilton.

Heard before the Hon. S. K. McSPADDEN.

The bill in this case was filed on the 11th February, 1887, by J. F. B. Jackson, against C. W. Stanley and his wife, Mrs. Mary E. Stanley; and sought to establish and enforce a vendor's lien on land for the unpaid purchase-money. The contract for the sale of the land was made between complainant and said C. W. Stanley, who executed his several notes for the purchase-money, which were past due and unpaid when the bill was filed. A conveyance for the land was at the same time executed to Mrs. Stanley, but the bill alleged that this was done at the instance and request of her husband; while the answer of the defendants alleged that she was the real purchaser, and that the contract was made by her husband, as her agent, in her name, and for her benefit. At the time the contract was made, and as part of it, Stanley and wife deposited with the complainant a certificate of several shares of stock in the "Prattville Manufacturing Company No. 1," which belonged to Mrs. Stanley; and the complainant gave a receipt for it, which stated that he had received the certificate from Mrs. Stanley "as collateral security for the notes of her husband," and that it was to be surrendered on prompt payment of the notes; and further, "should said notes not be paid, this stock to be lawfully sold by me [him], and any balance after payment of said notes to be paid to her." This receipt, as copied in the transcript, appears to be signed by the complainant and Mrs. Stanley, after which the words are added, "This is agreed to by us;" to which is signed the name of "C. W. Stanley, husband of Mary E. Stanley" The receipt appears, also, to be attested

[Jackson v. Stanley.]

by John N. Webb and S. J. Brock as subscribing witnesses; but Stanley testified, on the part of the defendants, that Webb signed as attesting witness to complainant's signature, and Brock afterwards as witness to the signatures of himself and his wife. The certificate was retained by the complainant, and was in his possession when the bill was filed; but he offered to return it, alleging that the pledge of it was illegal and void, because the stock belonged to Mrs. Stanley, and could not be pledged or transferred as security for her husband's debt.

The conveyance to Mrs. Stanley, the complainant's receipt for the certificate of stock, and Stanley's notes for the purchase-money, were all dated April 7th, 1884, the day on which the contract was consummated. In November, 1882, the complainant had sold and conveyed the same lands to David H. Mullens, taking his notes for the purchase-money, and a mortgage on the lands to secure their payment; and these notes being past due and unpaid at the time of the sale to Stanley and wife, complainant transferred them to Mrs. Stanley, by writing dated April 7th, 1884; and two days afterwards, April 9th, he executed a formal quit-claim to Mrs. Stanley, of all his interest in the mortgaged lands, on the recited consideration of $750 in hand paid. On the 22d April, 1884, Mullens and wife executed to Mrs. Stanley a quit-claim deed to the land, the consideration being the surrender of his unpaid notes for the purchase-money. The complainant alleged in his bill, and testified as a witness for himself, that a vendor's lien on the land was retained, by express agreement between him and said Stanley; and he took the deposition of Geo. L. Morris, who was jointly interested in the land with him, and who testified to the same effect. Complainant also took the deposition of J. M. Bivings, to whom he had sent two of Stanley's notes for collection; and said Bivings testified, that when he pressed Stanley for payment of the notes, or for permission to sell the stock, Stanley said that he ought to be willing to wait, as he had a lien on the land. To this testimony objection was made by Mrs. Stanley. The defendants, in their answer, denied that any lien on the land was retained by the complainant, and alleged that Mrs. Stanley refused to buy unless she could get an absolute title unincumbered by any lien. In proof of their contention, they adduced as exhibits the several transfers and other writings above mentioned, and also a letter written by complainant to Stanley, which is without date, but said to

[Jackson v. Stanley.]

have been written two or three days before the consummation of the contract, after a personal interview between Stanley and Morris. The letter is in these words: "I wrote you several days since, accepting your proposition, taking your notes in place of Mullens, by you putting up one thousand dollars of Pratt stock, as you proposed, to secure payment. Answer, and oblige," &c. On receipt of this letter, Stanley alleged and testified, he at once went to Blount Springs, where complainant was, and there consummated the contract with him. The defendants also took the deposition of Charles Maxwell, who testified to a conversation between complainant and C. W. Stanley, "in Birmingham, in April, 1884," in which Jackson "told Stanley he would waive a lien on the land, if Stanley would give him power of attorney to sell certain factory stock, if the notes for the land were not paid; to which Stanley assented." The complainant objected to this testimony.

On final hearing, on pleadings and proof, the chancellor dismissed the bill; and his decree is here assigned as error.

W. A. COLLIER, for appellant.

WATTS & SON, contra.

CLOPTON, J.—The lien which equity, on principles of natural justice, creates as security for the purchase price of land sold and conveyed, is the subject of waiver, express, or implied from the acts of the parties. Generally, the lien will be regarded as waived, if the grantor accepts any distinct and independent security. The authorities vary in the application of the rule to particular facts; and it would be difficult to formulate a general definition, specific, and yet comprehensive enough to include all acts which will operate to displace the lien. Ordinarily, this result is produced by the acceptance of the note or bond of a stranger, or of the grantee with personal security, or with a mortgage on other land, or a pledge of stock, or other personal property. There are cases, in which no one of several acts is, of itself, sufficient. In such cases, all the facts and circumstances should be considered, and if it appears that the vendor did not intend to look to the land, but to rely on a substituted, independent security, or on the personal responsibility of the vendee, the presumption is rebutted, and the retention of the lien repelled.—*Walker v. Struve*, 70 Ala. 167; *Carroll v,*

*Shapard*, 78 Ala. 358; *Stringfellow v. Ivie*, 73 Ala. 214; *Tedder v. Steele*, 70 Ala. 349.

The undisputed facts are: Appellant, who seeks by the bill to assert and enforce the equitable lien, sold and conveyed the lands in controversy, in 1882, to D. H. Mullens, for the sum of nine hundred dollars. Mullens gave his five notes for the purchase-money, the last maturing November 15, 1886, and executed a mortgage on the lands to secure the same. On April 7, 1884, complainant conveyed the lands to Mrs. Stanley, a married woman, on the expressed consideration of seven hundred and fifty dollars. For this sum, her husband gave his four notes, payable at long intervals of time, and Mrs. Stanley and her husband deposited with complainant two shares of the capital stock of the Prattville Manufacturing Company No. 1, of the par value of one thousand dollars each, as collateral security for the notes given by her husband, with power to sell the same on default in payment of the notes. Contemporaneously, and as part of the same transaction, complainant transferred to Mrs. Stanley, by instrument in writing, the notes and mortgage of Mullens.

The first inquiry is the sufficiency of the uncontroverted facts to show, *prima facie*, an intention to look to other independent security, instead of to the land, for the purchase-money. It satisfactorily appears, that the negotiations were conducted by Mrs. Stanley through her husband as agent, who bought the lands in her name, and for her benefit. It is unnecessary, for the purpose of this case, that we should go so far as to decide, as some respectable authorities hold, that where a married woman purchases land, taking a conveyance in her own name, and the husband gives his notes for the purchase-money, in whole or in part, he is regarded, in legal contemplation, a third person, and that the acceptance of his notes is, presumptively, a waiver of the equitable lien. The contrary is the logical tendency of our own decisions; which rather regard taking the husband's notes, in such case, as a mode of effecting a sale not voidable by the husband during coverture, and not as authorizing the wife to hold the lands without paying the purchase-money. *Carter v. Eads*, 65 Ala. 190; *Marks v. Cowles*, 53 Ala. 499. Though the acceptance of the husband's notes does not, of itself, rebut the presumption of a reservation of the vendor's lien, it is a fact or circumstance of more or less import and

[Jackson v. Stanley.]

significance, dependent on its connection with, and the nature of the other facts and circumstances of the transaction.

Accepting the husband's notes, secured by a mortgage or pledge of other property, has the same operation and effect as if the notes of the grantee were taken, secured in like manner. The shares of the capital stock of the manufacturing company, which were deposited as collateral security for the notes of the husband, were the statutory separate estate of Mrs. Stanley. The evidence shows that there was in fact only one subscribing witness to the signatures of herself and her husband to the instrument in writing by which the stock was pledged, though, on its face, there purports to be two. On this ground, and because of her incapacity to pledge the stock for her husband's debts, it is contended that it should not be allowed the effect of a waiver of the lien. Whether or not the lien has been waived, is wholly a question of intention, and does not involve, in the absence of fraud, the sufficiency or invalidity of the independent security taken and accepted. At the time of its acceptance, the complainant considered the stock as ample security; it was the security for which he stipulated, and both parties believed the pledge to be valid and binding. The case does not come within that class of cases, in which an invalid mortgage on the land sold and conveyed is taken. Such mortgage evinces an intention to look to the land as security. There is no pretense that any fraud was practiced. It is simply a case of taking an invalid security, supposed to be good, under a mistake of law. Under such circumstances, taking the stock as collateral security for the notes of the husband has the same effect as evidence of intention, as if the pledge were unexceptionable. Its invalidity does not necessarily operate to prevent a waiver. To whatever other rights and remedies complainant, under the circumstances, may have been entitled, equity can not relieve from the consequences of an election and waiver once made, by restoring and re-establishing the vendor's lien, the transaction being free from fraud.—*Partridge v. Logan,* 3 Mo. App. 509; 2 Wash. Real Prop. 96.

The lands had been previously sold and conveyed by complainant to Mullens, and a mortgage taken back to secure the purchase-money notes. At the time of the sale and conveyance to Mrs. Stanley, these notes were outstanding and unpaid, and the mortgage in full force. Complainant, by virtue of the mortgage, had, at law, only a defeasible legal title, and in equity a security for the mortgage debt. The notes

and mortgage were transferred to Mrs. Stanley, which armed her with powers, by foreclosure of the mortgage, to destroy the vendor's lien, if any had been retained. The equitable lien would have been insecure. In this condition of facts, it was natural and reasonable that the vendor should require other independent security. Considering the whole transaction, all the undisputed facts, which consist of the writings, conspire to show an intention not to look to the lands as security for the purchase-money.

It is, however, further insisted, that a vendor's lien was retained by express agreement, which presents the next inquiry. It is well settled in this State, that the presumption of a waiver of the lien, arising from the acts of the parties, may be rebutted and overcome by proof of an oral understanding or agreement that it should be retained.—*Woodall v. Kelly*, 85 Ala. 368. The burden of proof is, in the first instance, on the party asserting a waiver of the lien; but, when it is shown that a distinct or independent security, sufficient to operate as a waiver, has been taken and accepted, the *onus* is shifted on the vendor, to prove an understanding or agreement for its reservation. On this question of fact, we can not consider the evidence of Bivings. Had the proper predicate been laid, the admissions or declarations of Stanley, as proved by him, would have been receivable for the purpose of impeachment; but, having been made long after the consummation of the purchase, are not receivable to affect otherwise the rights of Mrs. Stanley.—*Carver v. Eads, supra.* The other parol evidence consists of the testimony of the complainant and Morris, who was interested in the land, on the one side, and of Stanley and Maxwell on the other. True, Stanley's character for veracity was impeached by several witnesses; sustained, however, by a much larger number. A partial impeachment may possibly impair his credibility more or less; but he is corroborated by Maxwell, who is a disinterested and unimpeached witness, and also by all the written instruments, and by the letter of Stanley, written by complainant pending the negotiations, in which he accepted the former's proposition to give his notes, their payment secured by a deposit of factory stock, without any allusion to the retention of the equitable lien. The complainant retained the shares of stock without an offer to return them, until the filing of the bill, which were regarded as ample security until the destruction of the factory by flood. On this state of the proof, the burden being on complainant,

[Calhoun v. Hannan & Michael.]

we can not say that the evidence is sufficient to overcome a presumption of the waiver of the lien.

Affirmed.