# Hubbard *v.* Buck.

*Bill in Equity to Enforce Vendor's Lien on Land.*

1. *When vendor's lien reserved.*—In every sale and conveyance of land, where the purchase-money is not paid, though the deed may recite its payment, upon principles of equity and good conscience the law presumes the reservation of the vendor's lien, without any special contract to that effect.

2. *Same ; when not reserved.*—The presumption of the reservation by the vendor, of his lien, may be overcome by the terms of the contract of sale, or where the attendant circumstances of the transaction satisfactorily show it was excluded, and that the vendor relied upon the personal credit of the vendor, or other security was taken and relied upon by the vendor.

APPEAL from Mobile Chancery Court.
Heard before the Hon. WM. H. TAYLOE.
The facts of this case fully appear in the opinion of the Court.

PILLANS, TORREY & HANAW, for appellants.—1. The vendor's lien is founded upon principles of good conscience which forbid that the purchaser should have and retain land for which he has not paid, but is a mere equitable presumption that may be rebutted, and may yield to other natural equities. *Burgess v. Greene,* 64 Ala. 509 ; *Terry v. Keaton,* 58 Ala. 667, 670.
2. The presumption of the reservation of the lien does not arise where it satisfactorily appears from the dealings and transactions that it was the intention of the vendor to rely solely on the personal credit of the vendor. *Carver v. Eads,* 65 Ala. 190 ; *Sims v. Nat. Bank,* 73 Ala. 248 ; 2 Jones on Liens, 1064 ; *Fox v. Frazer,* 92 Ind. 265 ; *Kelly v. Karsner,* 81 Ala. 500. Citing also, on other points, *Fiske v. Potter,* 2 Abb. App. Dec. 138 ; 3 Pom. Equity, § 1257 ; 57 Ala. 560 ; 73 Ala. 446 ; 2 Stew. 479 ; Bigelow Estopp. 476, 443 ; Herman Estopp. § 841 ; 101 U. S. 578 ; Meachem Agcy, 167, 178 ; 33 Ala. 509 ; 78 Ala. 99 ; 68 Ala. 170 ; 10 Ala. 755.

FAITH & ERVIN, for appellee, cited, *Hightower v. Rigsby,* 56 Ala. 128 ; *Newsome v. Collins,* 43 Ala. 663 ; *Foster v. Stallworth,* 62 Ala. 549 ; *Wilson v. Wall,* 34 Ala. 305 ; *Lockwood v. Tate,* 96 Ala. 353 ; *Herring v. Skaggs,* 73 Ala. 455 ;

[Hubbard v. Buck.]

2 Story's Eq. Jur. § 1224 ; 2 Pom. Eq. Jur. § 805 ; *Knowles v. Strut*, 87 Ala. 361 ; *Pounds v. Richards*, 21 Ala, 426.

COLEMAN, J.—John E. Buck, filed the present bill to enforce a vendor's lien upon certain land described in the bill of complaint. John E. Buck, and William J. Buck, owned the lands in fee as tenants in common and by deed absolute in its terms dated Nov. 17th, 1890. John E. Buck, conveyed the land to his co-tenant William J. Buck, and in the deed acknowledged payment of the consideration. On the 14th of November, 1890, W. Otis McMahon and William J. Buck, copartners doing business as McMahon & Buck, executed a mortgage upon the lands to appellants, Hubbard Bros., the consideration of the mortgage being the extension of a past debt due for twenty seven hundred dollars and a cash loan of fifteen hundred dollars. At the time of the execution of the mortgage, Hubbard Bros. had knowledge that the legal title to a half interest in the lands, was in John E. Buck the complainant.

On the 28th of November, 1890, the grantee William J. Buck, conveyed the same lands, in fee to the copartnership of McMahon & Buck. McMahon knew that his copartner William J. Buck, made no payment of the purchase-money for the half interest in the land to his vendor John E. Buck, the complainant. Whatever interest McMahon & Buck, held in the land by virtue of the conveyance from John E. Buck, to William J. Buck and from William J. Buck, to the copartnership of McMahon & Buck, enured to Hubbard Bros. under and by virtue of the mortgage executed to Hubbard Bros. on the 14th of November, 1890. *Chapman v. Abraham*, 61 Ala. 114. The evidence satisfactorily shows that when John E. Buck, executed the deed to William J. Buck, he had no knowledge that Buck & McMahon, had mortgaged the land to Hubbard Bros. The sole question then is, whether John E. Buck, waived the vendor's lien, when he conveyed the land to his brother William J. Buck. There is no material conflict in the evidence, upon which the determination of this question depends. In every sale and conveyance of lands when the purchase-money is not paid, although the deed may recite the payment of the purchase-money, without any special contract to that effect, upon principles of equity and good conscience the law presumes the reservation of the vendor's lien, unless the terms of the contract of sale, or the attendant circumstances of the transaction, satisfactorily show it was purposely excluded, and the vendor

relied upon the personal credit of the vendee, or other security was taken and relied upon by the vendor.

The testimony of the vendor John E. Buck, and his vendee, William J. Buck, satisfactorily show the following facts, which led to the conveyance of the deed to William J. Buck. J. Otis McMahon, and William J. Buck, formed the copartnership of McMahon & Buck, the purpose of which was to engage in the lumber business. McMahon agreed to put in the firm eight thousand dollars in cash, and William J. Buck, agreed to put in four thousand acres of land, at a valuation of two dollars per acre, John E. Buck, knew of this copartnership and its terms and the undertaking of his brother to put in the four thousand acres of land. William J. Buck, testifies that his brother John E. Buck, had promised to make him a deed in fee to the land, whenever he would request it, in order to enable him to comply with his agreement with McMahon, to put in the firm four thousand acres of land. William J. Buck, further testifies that his confidence in his ability to get this deed from John E. Buck, at any time, was his reason for mortgaging the lands to Hubbard Bros. absolutely, before he received the conveyance from his brother. He says that upon his promise to pay his brother for the land at the valuation as put into the firm of McMahon & Buck, his brother agreed to let him treat the land as his own. "We treated the land as assets of McMahon & Buck, in making the mortgage to Hubbard Bros." "The land was put in as my contribution of capital to the firm of McMahon & Buck."

John E. Buck, testifies as follows: "I did fully know when I signed the deed of my half interest in the lands described in the bill, that I did so to enable William J. Buck, to keep good his promise to his partner McMahon, to put the whole of said lands into the firm of McMahon & Buck, as a part of his contribution to the firm." "I made the deed to W. J. Buck, without any knowledge of what he anticipated, except that he wanted to make deed of said land to McMahon & Buck." . . . "I knew nothing of a vendor's lien was reserved or intended to be reserved as against the firm of McMahon & Buck. If McMahon agreed to put in eight thousand dollars in cash, and William J. Buck, four thousand acres of land at two dollars per acre, as an equivalent contribution, and John E. Buck, conveyed this land to William J. Buck, "to enable him to keep good his promise to his partner, McMahon, and that he might make the deed to McMahon & Buck, as a part of his contribution to the firm," such a purpose is utterly inconsistent with a reserva-

[Motley v. Jones.]

tion of a vendor's lien upon the land. He could not enforce the lien against McMahon & Buck. Their mortgagees Hubbard Bros. succeeded to whatever right they possessed and owned. Testing the question by complainants' testimony, and that of his brother the vendor, leaving out altogether the evidence of McMahon, which corroborates them in all respects as far as admissible and there is but one legitimate conclusion, and that is, that complainant relied entirely upon the credit of his brother, when he conveyed to him the land. This is the effect of the direct testimony of William J. Buck, and complainant. The court erred in holding that complainant had not waived his lien and that he was entitled to a vendor's lien upon the land.—*Carver v. Eads*, 65 Ala. 190; *Jackson v. Stanly*, 87 Ala. 270; *Crompton v. Prince*, 83 Ala. 246; *Kelly v. Karsner*, 81 Ala. 500.

The decree of the chancellor is reversed, and a decree will be here rendered, dismissing complainant's bill.

Reversed and rendered.