# Scheerer *et al.* v. Agee.

*Bill in Equity to Enforce a Vendor's Lien.*

1. *Vendor's lien; when it does not arise.*—When a tenant in common

conveys his interest in land to a co-tenant by deed reciting the payment of the purchase money of such interest, upon the express understanding and for the purpose of enabling the grantee in said deed to effect a sale of the whole property to another, no vendor's lien arises upon the grantee's failure to pay the purchase price; the credit extended, and the purpose and understanding with which the sale was made and the deed executed being wholly inconsistent with the reservation of the vendor's lien upon the land.

2. *Same; same.*—In order to establish a vendor's lien, there must be still unpaid a debt due to the vendor, contracted in the purchase of land, and which the purchaser, either at the time or at some prior date was liable to pay as a primary debtor, without condition; and where the owner of an interest in land conveys his interest to his co-tenant, in order to enable him to make a sale of the whole tract to a third person, and it was stipulated that the grantee in said deed, out of the purchase price to be received by him when the contemplated sale was made, should pay a certain indebtedness of the vendor and deliver the balance to him, the land so conveyed is not subject to a vendor's lien; there being no primary indebtedness from the grantee to the vendor.

3. *Vendor and purchaser; when trust in favor of the vendor arises in collateral security for payment of purchase money.*—Where the owner of an interest in land, conveys his interest to his co-tenant for the purpose of enabling him to sell the land to another, it being stipulated that out of the proceeds of such contemplated sale the original grantee should pay the purchase money for the vendor's interest, and the grantee conveyed the land to another, who had knowledge of the original vendor's equity, and who, with such knowledge, conveyed the lands to a corporation, taking its bonds as collateral security for the payment of the purchase money, the bonds so taken are charged with a trust in favor of the original vendor, and such proportion of the bonds as the original vendor's claim bears to the whole amount intended to be secured by them, in equity, belongs to the vendor.

4. *Equitable pleading and practice; when amendment no departure.* Creditors and holders of the bonds of a corporation filed a bill in equity to foreclose a deed of trust given to secure said bonds. While this suit was pending, the equitable owner *pro tanto* of the bonds held by one of the defendants to the original bill, to secure the payment of the price of lands purchased by the corporation, filed a bill, somewhat in the nature of a supplemental bill, to fasten a charge upon the subject matter involved in the original suit, and to have the amount realized upon the bonds paid *pro tanto* to complainant. Subsequent to the filing of this bill in the nature of a supplemental bill, there was a collusive and fraudulent agreement between the complainants in the original suit and the defendants thereto, that the foseclosure of the deed of trust be pretermitted, and a sale of the property of the corporation be decreed subject to said deed of trust. Thereupon the complainant in the bill in the nature of a supplemental

bill, amended his bill asking that he be subrogated *pro tanto* to the rights of the holders of the bonds given as collateral security for the payment of the purchase money, and prayed for a foreclosure of the deed of trust, and brought in as defendants the parties necessary for a foreclosure. *Held:* The amendment of the bill in the nature of a supplemental bill did not work an entire change of parties or make a new cause of action, and was not a departure from the original bill, and should be allowed.

5. *Same; bill to foreclose deed of trust must aver default.*—Where a bill is filed to foreclose a deed of trust given to secure bonds, it must be averred and shown that at the time of the filing of the bill the bondholders had the right to foreclose said deed of trust; and a bill filed for such purpose, which does not aver that the law day of the deed of trust has elapsed, or that it matured earlier than the law day by the happening of some event given that effect by stipulations of the instrument, is subject to demurrer.

APPEAL from the City Court of Montgomery.

Heard before the Hon. THOMAS M. ARRINGTON.

On the 18th day of February, 1893, Townsend & Brown, judgment creditors of the Cloverdale Land & Development Company, and holders of a large number of its bonds, which were secured by a deed of trust upon all of its property, including certain lands, filed their bill in the city court of Montgomery, in equity, in behalf of themselves and all other creditors of said company, praying for the appointment of a receiver to operate the property of the company, and that "the property of said corporation be sold and its other assets be collected, and that the amount realized from such sale and collection be distributed among them and the other creditors of said corporation according to their respective priorities."

The said bill further averred, that R. H. McClellan and Charles Scheerer had sold certain real estate to the said company upon credit for $60,000, receiving some of the said bonds of the company as collateral, and that notwithstanding said collateral for said unpaid purcha e money, said McClellan and Scheerer claimed a vendor s lien on said land, that said vendor's lien by reason of said collateral was without foundation and that said Mc-Clellan and Scheerer had only a lien by virtue of said bonds. Upon these averments they prayed that the court "would decree that said McClellan and Scheerer had no vendor's lien upon said land in section 19 here-inabove described, but that they are only entitled to participate with complainants as holders of said bonds

[Scheerer *et al.* v. Agee.]

secured by first mortgage or deed of trust upon said lands and other property."

At the time this bill was filed, there had been no default in the said deed of trust. The first interest payment on the bonds was March 15th, 1893, nearly two months after the filing of the bill, and the trust deed provided that default in payment of interest or otherwise must continue six months before the right to foreclose accrued, making Sept. 15th, 1893, seven months after the bill was filed, the earliest date of foreclosure. The bonds were twenty year bonds, maturing upon default in payment of interest only at the option of the trustee named in the deed.

Such being the bill filed by Townsend and Brown, the appellee, W. C. Agee, on the 18th day of April, 1893, also before default by the corporation had been made, filed the present bill, which he prayed "might be taken as a supplemental bill to the said original bill." This supplemental bill averred that complainant therein, before the filing of said bill by Townsend & Brown, was seized of three-tenths of a one-fifth interest, and one Le-Bron of seventh-tenths of said one-fifth interest in certain lands described therein, being the one-fifth interest referred to in the said original bill as belonging to said LeBron; that he and said LeBron joined in the execution of a mortgage of said one-fifth interest to R. H. Mc-Clellan to secure an indebtedness of $3,500 to said Mc-Clellan of which $1,050 was received by him; that subsequent to the execution of said mortgage "complainant executed a deed of his interest in said tract of land to said LeBron for a consideration of $3,600, recited in said deed to have been paid, but that no consideration in fact passed from said LeBron to complainant then or since, and that said sum of $3,600 is still due and unpaid; that said deed was executed upon the express understanding, and credit was extended to said LeBron for the purpose, of facilitating a sale by said LeBron of the entire property to the said Cloverdale Land & Development Company at an agreed price of $60,000, and that said LeBron, after discharging complainant's *pro rata* liability on the note to McClellan out of the money received by him on account of the purchase of complainant's interest in the property, was to pay over the balance to complainant." The bill further avers that afterwards, LeBron undertook

to convey to said Charles Scheerer all of his interest in said lands "including the interest complainant had before that conveyed to him as set out" in the bill, for a fictitious consideration, and that said Scheerer had notice of "the agreement and understanding between complainant and LeBron." It further avers that thereafter Scheerer and McClellan, who owned the other four-fifths interest which was to be sold with said one-fifth interest at an agreed price of $60,000, united in a conveyance of said property to F. B. Pickering who paid nothing for the conveyance, and who had notice of complainant's equities and rights ; that Pickering, "in pursuance of a scheme to enable him to pay for his stock in said company, executed a conveyance of said property to said company," as alleged in the original bill of Townsend & Brown, and that said company had notice of the com·plainant's rights.

Townsend & Brown, complainants in the original bill, were not made parties to the supplemental bill. The prayer of this supplemental bill is as follows : "And complainant prays that this bill may be taken as supplemental to the said original bill hereinbefore referred to, that the interest of complainant and said LeBron, either in the vendor's lien upon the land herein described, which this court may decree in the proceedings had under the original bill, or in the amount to be realized from any sale of the property of said Cloverdale Land & Development Company in the event such sale be decreed, be charged and condemned to the payment *pro ratā* of the indebtedness of complainant and said LeBron to McClellan, and the remainder be decreed to be paid to complainant, and that complainant may have the benefit of any decree or proceedings had in the said original bill in favor of the said Scheerer as far as may be necessary to protect complainant's equities in the premises."

. This supplemental bill was amended July 11, 1893, in which amendment it was averred that after said supplemental bill was filed, such proceedings were had in said case of Townsend & Brown, as that a decree was rendered therein in favor of Townsend & Brown, which 'merely ordered that said properties of said Cloverdale Land & Development Company should be sold subject to and in subordination to the deed of trust" described in said bill of Townsend & Brown, and "neither the rights

and equities of said Charles Sheerer nor of said R. H. McClellan were in any wise affected by said decree, or any provision made therein for the enforcement thereof;" and that all of the properties of said Cloverdale Land & Development Company were sold under said decree and bought in by said Townsend & Brown for three thousand dollars. It was further averred in said amendment that Townsend & Brown, in their original bill, had sought for and prayed a•foreclosure of said deed of trust, and a complete winding up and settlement of the affairs of said company, and that, "relying on the expressed object and aims of said bill of Townsend & Brown, and deeming that they would in good faith seek a complete settlement of all the affairs of said company, and the distribution of the proceeds of a sale of its property among all those entitled to participate therein," complainant "did not make either said Townsend & Brown or the Farmers Loan & Trust Company, trustee as aforesaid under said mortgage, parties to said supplemental bill, nor ask for a foreclosure of said deed of trust." It was further averred in said bill as amended that, as stated in the original bill of Townsend & Brown, said Townsend & Brown and Scheerer and McClellan are the holders of all the bonds issued by said company; that Townsend & Brown, acting in collusion with said McClellan and Scheerer, "departed from the purpose of the said original bill, and procured from this honorable court only the decree aforesaid, thereby preventing the complainant from enforcing his rights in the premises as vendor of said lands against that portion of what would have been the proceeds of a sale under a foreclosure of said deed of trust, which would have been apportioned to said Scheerer as owner and holder of a number of the bonds of said company as appears in said bill of Townsend & Brown." It was also averred that Townsend & Brown and all other persons named as defendants in the supplemental bill, at the time they acquired any lien or interest in the property and effects of the Cloverdale Land & Development Company, had full notice of complainant's lien on the lands conveyed by him to LeBron for the unpaid purchase money thereof.

To the supplemental bill as amended, the said Charles Scheerer, R. H. McClellan, and A. C. Townsend and W. M. Brown, as partners under the name of Townsend &

[Scheerer *et al.* v. Agee.]

Brown, the Cloverdale Land & Development Company, and the Farmers Loan & Trust Company were made parties defendant; and the prayer of said amended bill is as follows: "And the premises considered may it please your honor, as additional relief to that already prayed for in complainant's bill as heretofore filed, complainant prays that the said mortgage deed of trust, executed to said Farmers Loan & Trust Company be, under an appropriate decree of this court, foreclosed; that the properties, franchises and effects of said company conveyed by said mortgage deed of trust be decreed to be sold, and the proceeds of said sale be distributed among those entitled thereto; and that complainant be subrogated to all rights of said Charles Scheerer as far as may be necessary to perfect complainant's equities as in the orginal prayer of this bill provided, and as, the premises considered, may be just and equitable." On the 2d day of February, 1894, appellee again amended his said supplemental bill, by amending the prayer of said bill "by adding the following, towit, complainant prays that this court will make a decree declaring in complainant's favor a vendor's lien on said land, and that the same be sold for the satisfaction of said lien."

The respondents, Charles Scheerer, R. H. McClellan, and Townsend & Brown filed joint and separate demurrers to the supplemental bill as amended, assigning, among others, the following grounds: 1st. That said bill seeks to establish a parol trust in certain lands described therein. 2d. The bill shows that the vendor's lien was waived. 3d. The bill shows that the land upon which the vendor's lien is sought to be fastened has been conveyed to the trustee, and fails to aver that said trustee had notice of the complainant's lien. 4th. The bill fails to show that such default has been made by the Cloverdale Land & Development Company as to authorize a foreclosure of the deed of trust. 5th. The bill shows that the respondents, McClellan and Scheerer, had conveyed the land described in the bill to F. B. Pickering prior to the filing of said bill. 6th. The bill fails to show that complainant has any interest which entitles him to a foreclosure of said deed of trust. 7th. The bill, as amended, is a departure from the original bill. 8th. The bill shows that said property has been sold under the decree in the cause of Townsend & Brown

against the Cloverdale Land & Development Company, and that no provision was made in said decree for enforcing any rights of McClellan and Scheerer.    9th. The bill shows by its averments that the suit of Townsend & Brown against the Cloverdale Land & Development Company has been terminated by final decree and sale, and that, therefore, the bill is not supplemental to said original suit.    There was also a motion to dismiss the bill for the want of equity.

Upon the cause being submitted to the court upon the demurrers of the respondents to the original and amended bills, the chancellor overruled each ground of demurrer.    This appeal is prosecuted by the respondents from the decree overruling their demurrers, and said decree is here assigned as error.

HORACE STRINGFELLOW and TOMPKINS & TROY, for appellants.—1. To maintain a bill to enforce a vendor's lien, there must be a debt due to the complainant contracted in the purchase of the land, still unpaid and which the purchaser either at the time or at some prior date was liable to pay as a primary debtor, without condition.— *Thomason v. Cooper*, 57 Ala. 560 ; *Kelly v. Karsner*, 81 Ala. 504 ; *Kyle v. Bellenger*, 79 Ala. 520 ; *Jenkins v. Mathews*, 80 Ala. 488.

2. Upon the facts stated in the bill, LeBron could not have been liable to appellee, except upon the condition that the sale which the conveyance was made to facilitate should be made as agreed, and then only as trustee for the purpose expressed.—*Jenkins v. Mathews*, 80 Ala. 488.

3. Appellee was not a creditor of the Cloverdale Company.    He was a stranger to the Townsend & Brown suit.    Claiming an interest in what might come to one of the defendants in said suit, he files a bill to obtain said interest which he prays may be taken as supplemental to said suit, and such would be the character of the relief he prays if obtained.    His proceeding is analogous to a petition and was required by the absence of privity.—*Foscue v. Lyon*, 55 Ala. 456 ; *Ex parte Printup*, 87 Ala. 151.    When a petitioner avers in his petition the purpose for which he desires to be a party to the former suit, to that purpose he must be held.—*Boykin v. Kernochan*, 24 Ala. 699 ; *Ex parte Branch*, 53 Ala. 149.

4. The relief prayed in the bill, as amended, is repugnant to and inconsistent with the relief prayed and the purpose of the bill as originally filed. ·The original bill contemplated and anticipated a foreclosure of the deed of trust in the suit to which it was supplemental; the bill as amended contemplates and prays for that foreclosure in the supplemental suit. The amendment of July 11th was a clear departure from the bill as originally filed, and the demurrers of appellees upon that ground should have been sustained.—*Parsons v. Johnson,* 84 Ala 254; *Stubbs v. Kohn,* 64 Ala. 186; *Jones v. Reese,* 65 Ala. 142; *Ward v. Patton,* 75 Ala. 208.

SAYRE & PEARSON and GORDON MACDONALD, *contra.*— 1. The beneficial owner of trust property is entitled to the proceeds, whatever be their form, provided only he can identify them. If they can not be identified by reason of the trust money being·mingled with that of the trustees, then the *cestui que trust* is entitled to a charge upon the new investment to the extent of the trust money traceable into it.—*Cen. Nat. Bank v. Conn. Mut. Ins. Co.,* 104 U. S. 54; 2 Pom. Eq., § 1051.

2. As a necessary consequence of this doctrine, whenever property subject to a trust is wrongfully sold and. transferred to a *bona fide* purchaser so that it is freed from the trust, the trust immediately attaches to the price or proceeds in the hands of the vendor, whether such price be a debt yet unpaid due from the purchaser, or a different kind of property taken in exchange, or even a sum of money paid to the vendor. as long as the money can be identified and reached in his hands or under his control. It is not essential for the application of this doctrine, that an actual trust or fiduciary relation should exist between the original wrongdoer and the beneficial owner. Wherever one person has wrongfully taken the property of another, and converted it into a new form, or transferred it, the trust arises and follows the property or its proceeds.—2 Pom. Eq., § 1051. The vendee of land is a trustee.—3 Brick. Dig. 613, § 44.

McCLELLAN, J.—When the inquiry is whether the vendor of land intended to waive his lien for the purchase money, the purposes of the sale and conveyance may be quite material; and the averment in a bill to de-

clare and enforce a lien of a purpose to be subserved by the sale which is inconsistent with the retention or existence of the lien is not mere innocuous garrulity on the part of the pleader, but subjects the bill to demurrer for showing that the lien it seeks to enforce does not exist. The present bill shows that the complainant owned three-tenths of a one-fifth interest in a certain tract of land; that one LeBron owned seven-tenths of one-fifth interest in said land, and that R. H. McClellan and Charles Scheerer owned the remaining four-fifths interests in said land. Complainant and LeBron borrowed $3,500 from said McClellan, executed their notes for the amount and a mortgage on said one-fifth interest to secure the same, and divided the loan between them according to their interest, respectively, in the land; complainant receiving $1,050 and LeBron $2,450. It is further averred in the bill, "That subsequent to the execution of said note and mortgage to McClellan, complainant executed a deed of his interest in said tract of land to said LeBron for a consideration of $3,600, recited in said deed to have been paid, but complainant avers that no consideration in fact passed from said LeBron to complainant, then or since, and that said sum of $3,600 is still due and unpaid. Complainant avers that said deed was executed upon the express understanding and credit was extended to said LeBron for the purpose of facilitating a sale by LeBron of the entire property to the Cloverdale Land and Development Company at an agreed price of $60,000, and that said LeBron, after discharging complainant's *pro rata* liability on the note to McClellan out of the money received by him on account of the purchase price of complainant's interest in the property, was to pay over the balance to complainant." It further appears that LeBron conveyed the interest he thus acquired from Agee together with his own seven-tenths of one-fifth interest to Scheerer, that Scheerer and McClellan then conveyed the whole of the tract to Pickering, and the latter in turn conveyed to said Cloverdale Land and Development Co. We do not think there can be any doubt on these facts, as averred in the bill, that complainant's purpose in executing the deed to LeBron, and the understanding on all hands, was to vest a perfect title to his interest, along with the other interests in the land held by LeBron and McClellan and Scheerer,

in the Cloverdale Company free from a vendor's lien, nor that this purpose and this understanding were fully accomplished and carried out through any of the several conveyances ending with Pickering's deed to the company. The case presented by the bill is in principle the same in respect of a vendor's lien as that of *Hubbard v. Buck*, 98 Ala. 440. Wm. J. Buck and John E. Buck owned a tract of land as tenants in common, as did Agee and LeBron here. William formed a partnership with McMahon agreeing to contribute to the joint capital the tract of land. Knowing this and with the purpose of enabling William to fulfill this agreement, John conveyed his interest to William. The deed recited payment of the consideration, but in fact it was not paid. William then conveyed the land to the partnership of which he was a member. Afterwards John filed his bill against William to declare and enforce a vendor's lien. But the relief was denied upon the ground that John had waived his lien; this court, by COLEMAN, J., saying: "If McMahon agreed to put in eight thousand dollars in cash, and William J. Buck four thousand acres of land at two dollars per acre, as an equivalent contibution, and John E. Buck conveyed this land to William J. Buck 'to enable him to keep good his promise to his partner McMahon, and that he might make the deed to McMahon & Buck, as a part of his contribution to the firm,' such a purpose is utterly inconsistent with a reservation of a vendor's lien upon the land;" and it was, therefore, held that the sale by John to William Buck was made in sole reliance upon the individual credit of the latter. Here the sale was made to LeBron on credit, payments to be made out of a particular fund and in a particular way, with the purpose and understanding that LeBron should unite with McClellan and Scheerer in vesting title to all interests in the tract in the Cloverdale Land and Development Company for a gross consideration of $60,000. As in the case of *Hubbard v. Buck*, the title was passed by Agee into LeBron, not to be held by the latter to his own use, but for the ulterior purpose of enabling him to combine the one-fifth interest, thereby in its entirety vested in him, with the four-fifths interest held by McClellan and Scheerer, and unite with them in a conveyance of the whole tract to the Cloverdale Land and Development Company; and this

purpose and understanding was in substance and effect executed and carried out. The existence of these facts disclosed by the bill, this purpose and understanding, are wholly and "utterly inconsistent with a reservation of a vendor's lien upon the land."

Moreover, another essential element of such lien, or fact necessary to its existence, is wanting on the case made by the bill. "To maintain a bill to enforce [a] vendor's lien, there must be a debt due to the complainant, contracted in the purchase of the land, still unpaid, and which the purchaser, either at the time, or at some prior date, was liable to pay as a primary debtor, without condition."—*Thomason v. Cooper*, 57 Ala. 560, 564; *Kelly et al. v. Karsner*, 81 Ala. 500, 504. The purchaser here, i. e., the grantee, is LeBron. The bill shows that he was never under obligation primarily and without condition to pay Agee anything whatever for the land. He did not take a conveyance of the land to his own use, but as a mere conduit for the passing of the title into the company. It was known beforehand what price the company would give for the whole tract, and it was contemplated that LeBron should receive for Agee three-tenths of one-fifth of the purchase money, being $3,600, the consideration recited in Agee's deed to LeBron, and it was stipulated that LeBron should out of this sum pay a certain indebtedness of Agee and deliver the balance to him. And this was the full extent of LeBron's obligation : to convey the land to the company, to receive the purchase money from the company for Agee, and to pay it out for and to Agee. When it is said the sale was to him on credit, the facts demonstrate that by this is intended that the conveyance to him was on the faith and confidence and credit that he would convey to the company at the price of $3,600, which, indirectly and substantially, he did, and would collect and receive that amount from the company, which, it appears, he has not done. But whatever he has done or failed to do in the premises, it is most clear that he at no time undertook to pay, or to account to Agee for, the $3,600, except out of and with the money he should receive from the company. And if he had retained the land and a bill had been filed against him to enforce a vendor's lien, there is no question but that, while Agee might have been entitled to the land as upon

a trust resulting from the fact that the trust upon which the grant was made had failed, he could not have had a decree against LeBron personally. The trust not having failed, but having been executed by the transmission of title into the Cloverdale Company, the proceeds of the sale belonged to Agee, and only upon their receipt by LeBron would he have been under obligation to pay the same in part for and in other part to Agee—a liability entirely ulterior to the conveyance by Agee to LeBron. Upon this ground also, therefore,—that the bill shows there was no primary indebtedness from LeBron to the complainant—we base our conclusion that the complainant reserved no vendor's lien upon the land in question.

But it by no means follows that Agee is without equitable rights and remedies in the premises. Had LeBron received the recited consideration of $3,600, directly or indirectly, from the Cloverdale Company, he would have held it in trust for Agee, and the latter might either have sued him at law in an equitable action for money had and received, or proceeded in chancery against any property into which LeBron had converted it. So, on elementary equitable principles, if LeBron had received tangible property intead of money in payment for the land, clearly the trust for Agee would have attached to this property. Clearly also, if LeBron had received neither money nor property in payment, but instead had sold and conveyed to the company on a credit, as indeed, so far as anything appears in the bill is concerned, he might have done, and taken collateral security, such as bonds or other choses in action, for the payment of the purchase money, such collaterals would have been held by him in trust for, and in equity would have belonged to, Agee. And, of course, whatever trust in favor of, or equitable ownership in, Agee would have attached to such collaterals in the hands of LeBron, would equally attach to them in the hands of any person to whom they came with notice of Agee's equity. It appears that Scheerer with full knowledge of the equities of Agee, finally sold the whole tract of land including Agee's interest to the Cloverdale Co. on credit, and took as collateral security for the payment of the purchase price, bonds of said company secured by a mortgage on all the property of the company including this land. Those bonds, in the hands of Scheerer or anybody else taking them with notice of Agee's rights, or so

many of them, or so much in amount of them, as bear the relation to the whole number or amount received by Scheerer or such other person, as Agee's claim bears to the whole amount intended to be secured to Scheerer by them, in equity belong to Agee; and he is entitled to stand in the place of any such holder of them in the division of the proceeds to arise from the foreclosure of the mortgage securing them.

The present bill, being filed by a stranger to the pending suit of Townsend & Brown against the Cloverdale Land and Development Co. and McClellan and Scheerer, and setting up matters not involved in that case, nor necessary to the relief there sought, is not a supplemental, but an original bill, having something of the nature of a supplemental bill, perhaps, in that it seeks in one phase to fasten a charge upon the subject matter there involved, and in another aspect seeks to give a particular direction to a part of the fund which would have come to the hands of the court in that case had the decree granted all the relief prayed therein. Agee being, on the facts averred in his bill, the equitable owner *pro tanto* of the bonds held by Scheerer to secure payment of the price the company was to pay for the land, and Townsend & Brown having filed their bill against the company and Scheerer *et al.* to foreclose the mortgage securing these bonds, whereby, had this relief been insisted on and granted a decree would have passed, under which Scheerer would have received the amount of these bonds which belonged to Agee, the latter's equity to have such proceeds decreed to be paid to himself, in the contingency in contemplation when he filed his bill, can not, we think, be doubted. But that relief, as appears by the amendment to Agee's bill, was forestalled by the collusive and fraudulent agreement between Townsend & Brown and McClellan and Scheerer in pursuance of which the demand for foreclosure of the mortgage securing said bonds made in the bill of Townsend & Brown was pretermitted, and a decree taken only for the sale of the company's property, subject to said mortgage, the ulterior purpose of these parties being, as is alleged, to shuffle the bonds held by Scheerer but belonging equitably to Agee into Townsend & Brown by such indirection as would enable them to claim protection against Agee's

equity as *bona fide* purchasers for value without notice. This amendment of the bill is not, in our opinion, a departure from Agee's original bill. Both the bill, as originally filed, and this amendment to it present the claim of the complainant in two aspects. In the former as in the latter Agee asserts his right to the proceeds of bonds held by Scheerer; and this right he has on the facts alleged. This is one aspect. In the other, both the original and amended bills assert a vendor's lien on the land formerly belonging to Agee but now owned by the Cloverdale Co. And this claim is, on the facts disclosed in the bill, original and amended, ill-founded. Eliminating this latter claim, and the bill throughout seeks to subject the bonds held by Scheerer to the complainant's equities. In the original bill this is sought to be done through a decree giving direction to the proceeds of such bonds coming to Scheerer through the foreclosure then prayed in the suit of Townsend & Brown, and supposed to be imminent. In the amendment this is sought to be done through a decree of foreclosure in this suit, and the parties necessary to foreclosure are brought in. The *gravamen* of the original bill, and of the amended bill is the same—the equitable ownership of Agee in certain bonds held by Scheerer and his consequent right to the proceeds thereof. Facts occurring subsequent to the filing of the original bill—and which constitute matter supplemental to this bill in a much more accurate sense than the matter of the original bill was supplemental to the bill of Townsend & Brown—rendered it impracticable for the relief prayed to be granted on the averments of that bill. The amendment brings in these facts and the parties necessary to relief upon them, and prays for the same relief, the subjection of bonds held by Scheerer to the satisfaction of Agee's claim, by a foreclosure at the suit of the latter as equitable owner of the bonds in question. The amendment did not work an entire change of parties, nor bring forward a new cause of action: it only showed the necessity for the foreclosure under this bill, which was about to be decreed but, because of this bill in its original form, was not decreed through collusion and fraud in the Townsend & Brown suit, and with reference to which relief was originally prayed.

But the bill as amended, considered solely with reference to the aspect in which the complainant's rights are

based upon his equitable ownership of bonds secured by the mortgage, is demurrable in that it does not show that bondholders had at the time it was filed, or even at the time it was amended, the right to foreclose said mortgage. For aught that appears by the bill the law day of the mortgage has not elapsed, and it has not been brought to maturity earlier than the law day by the happening of any event given that effect by stipulations of the instrument, as the non-payment of interest, for instance. The assignments of demurrer addressed to this point should have been sustained. This may be an amendable defect for all we know or can learn from the record before us; and hence we can not say that the court erred in overruling the motion to dismiss for want of equity.

The demurrers which went to the bill in that aspect in which it asserted or claimed as upon a vendor's lien should also have been sustained.

The decree overruling the assignments of demurrer referred to above is reversed A decree will be here entered sustaining said assignments, allowing complainant thirty days to amend his bill in the city court, and remanding the cause.

Reversed and remanded.