# Carver v. Eads.

*Bill in Equity to enforce Debt as Charge on Land, in nature of Vendor's Lien for Unpaid Purchase-Money.*

1. *Promise for benefit of third person.*—When a stipulation for the benefit of a third person is inserted in a contract—as, a promise by one party to pay him a debt due and owing by the other—and this forms a part of the consideration of the contract, the promise enures to his benefit, if he elects to accept it; and he may manifest his acceptance, by resorting to any appropriate remedy, legal or equitable, for its enforcement.

2. *Vendor's lien; payment of debt to third person, as part of purchase-money.* When the purchaser of lands assumes, as part of the purchase-money, a debt which the vendor owes to a third person, and the latter elects to claim the benefit of the promise, he may enforce his debt as a charge on the land, in the nature of a vendor's lien for the unpaid purchase-money.

3. *Same; purchase by husband, for wife, without her authority.*—In such case, if the purchaser bought the lands for his wife, and took the title in her name, she can not hold the land, and repudiate the promise to pay the debt, because she was ignorant of it when made, and her husband exceeded his authority as her agent in making it; though she might claim a rescission of the contract on that account.

4. *When vendor's lien arises.*—A specific intention to reserve or create a vendor's lien, at the time the contract was made, is not necessary to its existence : it arises by legal implication, as an incident of the contract, unless there is satisfactory evidence of a purpose to exclude it.

5. *Burden of proof, as to contract sought to be enforced; husband's admissions, as evidence against wife.*—The answers of husband and wife denying the alleged contract, sought to be enforced in the nature of a vendor's lien, though not under oath, and expressed in equivocal terms, impose the burden of proof on the complainant ; and the subsequent admissions of the husband, as to the terms of the contract, are not competent evidence against the wife, when it is not shown that she had any connection with them.

[Carver v. Eads.]

APPEAL from the Chancery Court of Sumter.

Heard before the Hon. A. W. DILLARD.

The bill in this case was filed on the 19th May, 1876, by Caswell Eads, against Thomas J. Carver and his wife, Ulrica E. Carver; and sought to enforce a charge in the nature of a vendor's lien, on a tract of land which had been sold and conveyed to Mrs. Carver by B. F. Carver, who was the brother of said Thomas J. The debt sought to be enforced by the bill was due and owing to the complainant from said B. F. Carver, and a promise to pay it was alleged to be a part of the consideration of the sale and conveyance of the land. The material facts are stated in the opinion of the court. On final hearing, on pleadings and proof, the chancellor rendered a decree for the complainant; and his decree is now assigned as error.

THOS. B. WETMORE, for appellants.

A. W. COCKRELL, contra.

BRICKELL, C. J.—The averment of the original bill is, in substance, that Benjamin F. Carver was indebted to the complainant, in the sum of twelve hundred and forty-two 42-100 dollars; that, being so indebted, on the 10th day of September, 1869, he bargained and sold to Thomas J. Carver and his wife a tract of land; that at the time of the sale there was an agreement between the vendor and vendees, that in part payment of the purchase-money the vendees should pay the complainant the said debt due him from the vendor. The prayer of the bill is, that a lien on said lands, for the payment of said debt, may be declared in favor of the complainant, and, if said debt is not paid, that the lands may be sold.

Assuming the truth of the averments,—and the demurrer is an admission of their truth,—the promise of the vendees, though not made directly to the complainant, enured to his benefit, and, on acceptance of it, he could pursue, in his own name, any appropriate legal or equitable remedy for its enforcement. Acceptance he manifests, indisputably, as between him and the promisee, whenever he resorts in his own name to appropriate remedies for the enforcement of the promise.—Henry v. Murphy, 54 Ala. 246. To the extent of the debt, the purchase-money being unpaid, a lien on the lands, for its payment, would have resulted by implication of law. The lien passed to the complainant, as an incident to the agreement; or, rather, the agreement created a trust, a charge on the lands, for the payment of the debt, which a

court of equity will enforce for his benefit. Such trusts are often created by the agreement of parties, not only in lands, but on personal property, and on money in the hands of a third person.—2 Story's Eq. § 1231; 1 Jones' Mort. § 214. If the complainant had, as he might have done, refused to accept the promise, holding the vendor to his original liability, the lien of the latter, to the amount of the debt, would have been recognized and enforced. Otherwise, contravening the intention of the parties, and violating equity and good conscience, the vendees would keep the lands without paying the purchase-money.

Nor is it material, whether Mrs. Carver was or not informed of, and assented to the agreement, nor whether her husband had authority from her to bind her by the promise. This amount of the purchase-money being deducted, in consequence of the promise, there can be no repudiation of it, without fraud upon the vendor. Into the contract of sale he would not have entered, if the promise had not been part of it; at least, such is the fair, legal intendment. While keeping the benefits of the contract, Mrs. Carver can not escape from any of its burdens or obligations. The want of authority in the husband to make the promise, coupled with her ignorance that it had been made, may entitle her to a rescission, and to restoration to the condition in which she was, and her rights as they then were; but it can not authorize her to hold the lands, without paying the purchase-money in the mode for which the vendor stipulated.

It may be, when the promise was made, the husband had not a specific intention to create a lien on the lands in favor of the complainant; and he may have been ignorant such was the legal operation of the promise. It is rarely true, when a conveyance is made of lands, that vendor and vendee have a specific intention to create a lien on the lands for the payment of the purchase-money; yet, if there is not in the contract, or in its attendant circumstances, satisfactory evidence that a reservation of the lien was not intended—that there was a purpose to exclude it, and to rely solely on the personal credit of the vendee—the law presumes its existence, upon the principle of natural justice and equity, that one man should not get and hold the lands of another without compensation. The principle applies here, where a part of the purchase-money is to be applied in satisfaction of the debt of the vendor, and for his relief. The true inquiry is, was it a part of the contract of sale made by Benjamin F. Carver, that, as payment of a part of the purchase-money, the vendees should pay the debt due from him to the complainant? If such was the agreement, the complainant has

[South and North Alabama Railroad Co. v. Morris.]

an equity to charge the lands with the payment of the debt, which is not affected by the ignorance of Mrs. Carver of the making of the agreement, nor by the fact that she had not authorized her husband to make it.

The answers deny,—rather equivocally, it is true,—the making of the agreement. The answers are mere pleading, verification of them having been waived by the complainant. Whatever might be the effect of them, if answers upon oath had been required, they are sufficient to put in issue, and cast upon the complainant the burden of proving the making of the agreement. The only evidence, tending to show the agreement, is the letter of the husband to the complainant, which was written at some time subsequent to the contract of sale. The wife had, so far as now appears, no connection with the letter. The declarations, or admissions of the husband, subsequent to the contract of sale, are not competent evidence against the wife, of the terms of sale. There is much in the case which induces the belief that the agreement was made, and that the ends of justice will be best attained by affording the complainant the opportunity of introducing, if he can, other evidence upon this point. We are constrained to reverse the decree of the chancellor, because the evidence does not now support it.

The decree is reversed, and a decree will be here rendered dismissing the bill; but without prejudice to the right of the complainant to file another bill, touching the matter in controversy.