(112 So. 819)
**JOHN F. CLARK & CO. et al. v. NELSON.**
(6 Div. 703.)

Supreme Court of Alabama. March 31, 1927.

Rehearing Denied May 19, 1927.

1. Contracts ⟨=187(1)—Creditor may sue on third party's contract with debtor, made for creditor's benefit.

Creditor, for whose benefit third party entered into contract with debtor for valuable consideration, may maintain action thereon against such third party obligor.

2. Contracts ⟨=252—Contract by which brokerage firm was to pay broker's indebtedness held rescinded by firm's refusal to proceed and surrender of consideration, which broker accepted.

Contract, by which cotton brokerage firm agreed to pay indebtedness owing by another broker to his customers for consideration, held rescinded by action of firm in refusing to carry out agreement and surrendering consideration shortly thereafter, where broker accepted consideration surrendered and made other disposition of property constituting part of consideration.

3. Contracts ⟨=274—Mutual rescission between parties to contract of agreement to pay promisee's indebtedness held valid defense to promisor against creditor of promisee, whose position remained unchanged.

Mutual rescission of contract between original parties thereto held complete defense to promisor as against promisee's creditor, for whose benefit contract was made, where creditor had not changed his position in reliance upon contract.

4. Contracts ⟨=187(1)—Promisor may interpose against creditor beneficiary defenses available as against promisee debtor, where position of creditor remains unchanged.

Promisor may interpose, as against promisee's creditor for whose benefit contract was made, any defense available as between himself and promisee, where creditor beneficiary has not acted in good faith upon promise so as to alter his position.

5. Contracts ⟨=274—Transactions of broker's creditor direct with firm which had agreed to pay broker's indebtedness did not prevent destruction of creditor's right against firm on rescission of agreement to pay indebtedness.

In suit by broker's creditor against brokerage firm agreeing to pay broker's indebtedness, fact that creditor subsequently placed orders direct with firm did not affect result of rescission of contract between broker and firm to defeat rights of creditor as beneficiary thereunder.

Appeal from Circuit Court, Jefferson County; John Denson, Judge.

Action on common counts by C. B. Nelson against John F. Clark & Co. and others. From a judgment for plaintiff, defendants appeal. Reversed and remanded.

Percy, Benners & Burr, of Birmingham, for appellants.

A contract whereby one party agrees to pay the debts of the other party may be rescinded by the parties to the contract at any time before the creditors for whose benefit the contract was made take action in reliance on it, and if the contract is rescinded by the original parties to the contract before the creditors take any action in reliance upon it, the creditors cannot bring suit on such contract. Georgia Home Ins. Co. v. Boykin, 137 Ala.

350, 34 So. 1012; Pugh, Stone & Co. v. Barnes, 108 Ala. 167, 19 So. 370. If one party to a contract offers to rescind the contract and to return the consideration received by him, the other party, by accepting the return of such consideration, effects a rescission of the contract, and no action can thereafter be brought on the contract. Moline Jewelry Co. v. Crew, 171 Ala. 415, 55 So. 144; 3 Williston on Contracts, § 1826; Woodard v. Willamette Valley Irrigated Land Co., 89 Or. 10, 173 P. 262; Ralya v. Atkins, 157 Ind. 331, 61 N. E. 726; McKenna v. McKenna, 118 Ill. App. 240.

Walter S. Smith, Black & Harris, and W. E. Fort, all of Birmingham, for appellee.

Where two parties make a contract for the benefit of a third party, and the third party either assents to that contract or acts upon that basis, then the original parties to the contract cannot thereafter rescind it, so as to defeat the beneficiary's right of action. Tweeddale v. Tweeddale, 116 Wis. 517, 93 N. W. 440, 61 L. R. A. 509, 96 Am. St. Rep. 1003; Sedgwick v. Blanchard, 164 Wis. 421, 160 N. W. 267; Starbird v. Cranston, 24 Colo: 20, 48 P. 652; Bay v. Williams, 112 Ill. 91, 1 N. E. 340, 54 Am. Rep. 209; Cobb v. Heron, 78 Ill. App. 654; Id., 180 Ill. 49, 54 N. E. 189; Rogers v. Gosnell, 58 Mo. 589; 1 Williston on Contracts, pp. 739, 742, 743, note 13; State Bank v. Schultze, 51 N. D. 66, 199 N. W. 138; Moore v. Baasch, 109 Wash. 568, 187 P. 388; McConaughy v. Juvenal, 73 Wash. 166, 131 P. 851; Putney v. Farnham, 27 Wis. 187, 9 Am. Rep. 459; Bassett v. Hughes, 43 Wis. 319; Knowles v. Erwin, 43 Hun (N. Y.) 150; Colwell Lead Co. v. C. M. & C. Co., 156 App. Div. 824, 142 N. Y. S. 112; Gifford v. Corrigan, 117 N. Y. 257, 22 N. E. 756, 6 L. R. A. 610, 15 Am. St. Rep. 508; Farrell v. Anderson, 211 Ala. 238, 100 So. 205; Huckabee v. May, 14 Ala. 263.

GARDNER, J.   One S. R. Stewart was engaged in the cotton brokerage business in Birmingham, and defendants in this action, John F. Clark & Co., were engaged in like business in New Orleans. Stewart placed orders on his own account for cotton with Clark & Co. Nelson (plaintiff in this suit) was a customer of Stewart, and, as a result of their cotton transactions, Stewart became indebted to Nelson in a sum in excess of $2,000. These transactions were had by Nelson with Stewart. This original indebtedness was from Stewart to Nelson, and there was no contractual relation between Nelson and Clark & Co. When the orders were placed with Stewart, he then placed his own order with Clark & Co., and out of the consummation of the contract each received a commission.

Stewart became financially involved, and called upon Clark & Co. for aid, and some loans were made. As a final result, Marks,

a member of the firm of Clark & Co., went to Birmingham to investigate Stewart's business, and ascertain if further financial assistance was feasible or desirable from a business standpoint. He remained there several days. Stewart remained open for business, but it was agreed, on account of Stewart's involved condition, that his customers, as they would come in to place their orders, should place the same direct with Clark & Co. in their own names. During this period, Nelson did so place a few orders resulting in a profit, which was paid him direct by Clark & Co., and constitutes no part of this litigation.

[1] Nelson brings this action against Clark & Co. to recover the balance due him by Stewart, upon evidence offered tending to show that Marks, acting for Clark & Co., while in Birmingham, agreed with Stewart, for a valuable consideration, to pay his indebtedness to his customers, including the debt to Nelson. Plaintiff's right to maintain such action under these circumstances is well settled in this jurisdiction (Liles v. Cox [Ala. Sup.] 110 So. 716;[1] Farrell v. Anderson Co., 211 Ala. 238, 100 So. 205; Huckabee v. May, 14 Ala. 263; Carver v. Eads, 65 Ala. 190), and is not here questioned.

Defendants deny that such agreement was made, and this constitutes a controverted issue of fact in the case. But, conceding such agreement, defendants insist they were entitled to the affirmative charge as duly requested, upon the theory that, upon the undisputed proof, there had been a rescission by mutual agreement between Stewart and Clark & Co. before plaintiff took any action thereon.

[2] We are of the opinion such mutual rescission was established by the uncontroverted proof. Stewart's testimony is to the effect the agreement was made by Marks on Tuesday (Marks leaving for New Orleans that night), and that he (Stewart) forwarded the money consideration and the mortgage on his home the following day to Clark & Co. None of the accounts being paid, he testified he learned, on Friday following, Clark & Co. would not carry out the agreement, and went to New Orleans to talk matters over. Defendants' testimony tends to show the accounts were much larger than they had been led to believe, and good cause of rescission; but that is a matter not here of material consequence. Stewart's testimony clearly discloses that Clark & Co. declined to further consummate any such agreement, and surrendered to him all consideration which had been paid, which he accepted, and afterwards conveyed some of the property in a general assignment for his creditors. Quoting from Stewart's testimony:

"Clark & Co. gave back to me everything I had given them in pursuance of this agree-

---

[1] 215 Ala. 327.

ment, and I do not contend they kept the mortgages or money or anything I gave them in pursuance of the agreement. * * * I accepted the mortgages back from them, and, after accepting the mortgages, I deeded the property over to other people without reference to those mortgages. * * * I did make another proposition to Clark & Co. after I realized this first proposition about Clark & Co. taking the mortgages, and so forth, and paying my debts, was off."

"The agreement to rescind need not be expressed. Mutual assent to abandon a contract, like mutual assent to form one, may be inferred from circumstances. Therefore, if either party without right claims to rescind the contract, the other party need not object, and, if he permits 'it to be rescinded, it will be done by mutual consent." 3 Williston on Contracts, § 1826.

"So a contract will be treated as abandoned when the acts of one party inconsistent with its existence are acquiesced in by the other." 13 C. J. 601.

This rule of law was recognized and given effect by this court in Moline Jewelry Co. v. Crew, 171 Ala. 415, 55 So. 144. See, also, Hayden v. Boyd, 8 Ala. 323.

[3] Indeed, that there was a mutual rescission of such agreement, if made, is not controverted by counsel for appellee in brief; but it is insisted that such rescission could not become effective as against this plaintiff, who assented to and acted upon the contract. Appellee relies upon that line of authorities, holding in effect that, upon the contract being made by one person for a consideration moving to him from another, promising to pay a third person a sum of money, the law immediately operates upon the acts of the parties and fastens a liability at once upon the promisors to this third person, which cannot be affected by any subsequent conduct of the promisor, and the original debtor. These authorities hold that in such a case the third person's right at once accrues and becomes absolute. The leading case sustaining this view is that of the Wisconsin court in Tweeddale v. Tweeddale, 116 Wis. 517, 93 N. W. 440, 61 L. R. A. 509, 96 Am. St. Rep. 1003, where many of the cases are discussed.

The question here involved has given rise to much discussion in the litigated cases, resulting in a great diversity of opinion. It forms the subject of an extensive note to Baxter v. Camp, 71 Conn. 245, 41 A. 803, 42 L. R. A. 514, 71 Am. St. Rep. 169. Five different grounds have been mentioned by the courts as foundation for the rule of liability, as trust relationship, the equitable right of subrogation, agency, priority of contract by substitution, and the broad equity of the transaction. Note Baxter v. Camp, 71 Am. St. Rep. 187.

Mr. Williston (1 Williston on Contracts, p. 742) makes a distinction between those cases of sole beneficiary and cases of debtor and creditor, saying:

"In most jurisdictions the distinction has not been clearly stated in the decisions between cases of sole beneficiary and cases of debtor and creditor. Most of the cases have been of the latter sort, and it has generally been laid down broadly as true of all cases that, prior to the assent or acting upon the promise by the third party, but not afterwards, a rescission or release is operative. * * * In theory, however, in a case of debtor and creditor, the situation is very different from that arising where the third person is sole beneficiary. The creditor's right is purely derivative, and, if the debtor no longer has a right against the promisor, the creditor can have none."

In the note to section 397, supra, the author states:

"What is required in the way of assent or acting upon the promise is not defined. Doubtless in many jurisdictions, if the third person had knowledge of the promise and made no objection he would be regarded as assenting. But in Crowell v. Currier, 27 N. J. Eq. 152 (Id., on appeal sub non. Crowell v. Hospital, 27 N. J. Eq. 650), it was held that rescission was permissible because the third party has not altered his position, the court apparently requiring something like an estoppel to prevent a rescission; and in Wood v. Moriarty, 16 R. I. 201, 14 A. 855, a release by the promisee was held effectual, though the creditors had made a demand upon the promisor for the money, because the creditors 'did not do or say anything inconsistent with their continuing to look to T. (the original debtor) for the debt.'"

Other authorities have likewise so determined, among them the Ohio Supreme Court in Trimble v. Strother, 25 Ohio St. 378, which is here very much in point. The court there said:

"The plaintiff brought his action to recover a debt which the defendant agreed with Rockwell, Long & Co., to pay the plaintiff. Before the plaintiff assented to or acted on the promise thus made in his favor, the agreement had been rescinded. This surely constituted a good defense. * * * The plaintiff's right rests solely on the agreement. He claims under Rockwell, Long & Co. In such case, if he has not been induced to alter his position by relying in good faith, on the promise made in his favor, the defendant is not estopped from setting up any defense which he could have set up against the enforcement of the promise by the other contracting party."

See, also, International Trust Co. v. Keefe Mfg. Co., 40 Colo. 440, 91 P. 915, and authorities cited in note to 13 C. J. 602, and 6 R. C. L. p. 886.

The authorities so holding evidently rest upon the principle as found stated by Mr. Williston, supra, that in such a case the "creditor's right is purely derivative, and, if the debtor no longer has a right against the promisor, the creditor can have none," and that therefore the mutual rescission of the contract is a complete defense available to the promisor, unless the creditor has acted upon the promise to his detriment.

This court is in accord with this line of authorities, though the decisions contain no elaborate discussion of the principle involved. The principle was given application in Pugh, Stone & Co. v. Barnes, 108 Ala. 167, 19 So. 370, where the substance of the holding is expressed in the first headnote as follows:

"Where the defendant has agreed to pay a debt due by a third person to the plaintiff, and the latter consents to the arrangement and releases such third person with consent of the defendant, the rights of the parties become fixed, and the defendant cannot show, in defense of an action on the agreement, that such third person had not performed his part of the contract. But, if the plaintiff has not consented to the arrangement, and discharged his debtor, the defendant can, in an action by plaintiff on such contract, make any defense he could have made had the suit been brought by such third person."

This authority was cited with approval in the later case of Georgia Home Ins. Co. v. Boykin, 137 Ala. 350, 34 So. 1012, wherein the court said:

"As a beneficiary of the contract between George Stuart and defendant, plaintiff, though it may not have been an original party thereto, had a right to subsequently release George Stuart and enforce that contract by suit in its own name. Carver v. Eads, 65 Ala. 190. But, before this right became fixed by such release, it was subject to be defeated by a rescission of the contract as between the original parties. Pugh, Stone & Co. v. Barnes, 108 Ala. 167 [19 So. 370]. A rescission having such effect, might have been made in the absence of, and without notice to the plaintiff, so long as it stood aloof from and gave nothing in consideration for the contract."

[4] We think, therefore, this court is definitely committed to the doctrine that the promisor may interpose any defense that was permissible as between himself and the original debtor, including, of course, mutual rescission of the contract so long as the creditor had not acted in good faith upon the promise so as to alter his position.

In the Rhode Island case of Wood v. Moriarty, 16 R. I. 201, 14 A. 855, the court said that, by bringing the suit against the promisor, the creditor acted in an unequivocal manner, acceding thereby to the terms of the contract so as to substitute the promisor for the original debtor, but we have no such question here presented. The agreement here involved was rescinded a few days after being entered into. Plaintiff thereafter filed his claim against Stewart, the original debtor, and assented to the general assignment of Stewart for the benefit of his creditors, including some of the property which constituted a part of the consideration of Stewart's contract with defendants. There was not only no release of Stewart from the debt, but emphatic insistence upon his liability thereon, all subsequent to the rescission.

[5] Plaintiff has not altered his position in reference to his debt against Stewart; he has suffered no detriment whatever, nor has his status, on account of any such contract, been changed financially or otherwise. Very clearly the mere fact that during a short period his orders, which ordinarily would have been placed with Stewart, were placed direct with Clark & Co., does not affect the situation. Such were new transactions, in no way involving or affecting this indebtedness, and out of which he seems to have made some profit which was paid to him by Clark & Co.

The principle as above announced and recognized in Pugh, Stone & Co. v. Barnes and Georgia Home Ins. Co. v. Boykin, supra, is well supported by both reason and authority, and is grounded in a sense of justice and fair play. We adhere thereto. Under the undisputed proof, applying said principle to the facts here adduced, the conclusion is reached that defendants were entitled to the affirmative charge as requested in writing, and for its refusal the judgment must be reversed.

Reversed and remanded.

ANDERSON, C. J., and SAYRE and BOULDIN, JJ., concur.

