**SEWARD et al. v. SOUTH FLORIDA SECURITIES, Inc.**

No. 8741.

Circuit Court of Appeals, Fifth Circuit.
May 23, 1938.

John W. Bull and Hilton S. Hampton, both of Tampa, Fla., for appellants.

Donald C. McMullen and Neil C. Mc-Mullen, both of Tampa, Fla., for appellee.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

The case of Seward v. Fagan, Receiver, 5 Cir., 75 F.2d 361, was a suit in equity brought upon the same contract here involved, but that suit was abandoned. The present suit is an action at law against the appellants as administrators of W. H. Seward subsequently begun by the Receiver of First National Bank of Arcadia, but now proceeding in the name of the appellee South Florida Securities, Inc., as assignee. There were two counts in the declaration, but the second was withdrawn and need not be noticed. A demurrer to the first count was overruled, and that judgment is the first error now assigned. The defendants made several pleas, each of which was stricken on demurrer, giving rise to other assignments of error. Judgment was then given de bonis intestatoris in favor of the plaintiff on the first count.

Since the errors assigned are rulings on demurrer, we can consider no facts except those in the several challenged pleadings, admitted by the demurrers to be true. The first count exhibits and makes a part of it a contract executed under seal by A. E. Bennett of the one part and by the defendants as administrators of W. H. Seward of the other part. The contract states by way of inducement that Bennett had in W. H. Seward's lifetime bought from him a certain drygoods business for $18,000,

with an agreement that if Bennett became dissatisfied with his purchase, or was unable to pay, the business could be returned to Seward, who would deliver up the notes for $18,000 and account for any differences in the stock of goods and assume the unpaid accounts for merchandise actually purchased; that Bennett since Seward's death had been called on to pay his notes but was unable, and stated that he must return the business; that the administrators recognized the validity of the agreement; and therefore they all had agreed that the inventory value of the business is $27,823; the purchase money notes and rent are $18,403; that $2,427 is owing jobbers as per list attached, leaving an equity in the business for Bennett of $6,689; the stock is delivered to the administrators who cancel and return the purchase money notes and rent claim and assume the debts to the jobbers, and agree to pay $6,689 to Bennett "as follows and not otherwise, towit: The party of the first part (Bennett) is due to the Bank $3,300, and the parties of the second part (the administrators) agree that as soon as they have taken care of the bills due jobbers that they will next pay to the Bank from the next sales derived from the stock of goods the said note of $3,300 and interest from this date; they will keep strict account of everything sold, so that this can be arrived at, and it is understood that they are not personally responsible for this said sum of $3,300 but it is to be taken out of, as above stated, the equity of the said party of the first part in said business"; Bennett is to take the balance due him in unsold merchandise. The first count then alleges that First National Bank of Arcadia is the bank mentioned in the contract, that the jobbers had been paid and the defendants had long since derived from the sale of the goods the additional sum of $3,300, but failed and refused to pay it over with interest.

■ The count is a good suit on the contract by the Bank as third party beneficiary. The person for whose benefit a promise is made may enforce it at law in Florida, although a stranger to the consideration and not a party to the making of the promise, because of a statute allowing the true party in interest to sue. Marianna Lime Products Co. v. McKay, 109 Fla. 275, 147 So. 264. The demurrer contends that the agreement was to pay only when the net proceeds of sales amounted to enough, but we do not so read the promise. It also contends that it appears that the administrators were without authority to make such a contract for the estate, involving a purchase of property and promises to pay money, and that considered as a compromise it is not supportable because there was no order of the probate court approving it as by statute required. We do not think the contract purports to be a compromise. No dispute is mentioned in it. Neither side is to take less or give more than was contended for. It seeks to accord to everyone his full rights under an agreement stated to have been made by the intestate. It rests upon that agreement. It is the duty of an executor or administrator to carry out the agreements (other than those for personal service) made by the deceased. 24 C.J., Ex'rs and Adm'rs, § 472; 11 R.C.L., Ex'rs and Adm'rs, § 173. No authority from the probate court was necessary. If any burdens are placed on the estate the deceased created them while he was its master. The demurrer was properly overruled.

■ One of the pleas seeks to set up large expenses in selling the goods which resulted in reducing the amount in hand so that it is not enough to pay the Bank; and another alleges that no order of the probate court authorizing the contract was had. What is to be paid the Bank is a part of what is owing Bennett on the repurchase from him of the goods. The contract does not say that the purchase price is to be affected by expenses the administrators may incur in disposing of the goods. They were to take them back at the agreed inventory price, and their disposal was left to them. Presumably they would fix a retail price enough above the inventory price to cover costs of selling. The taking of the goods at the inventory price was pursuant to an agreement of the deceased and needed no court authority. These pleas are not good.

■ But the tenth, thirteenth and fourteenth amended pleas are each presented as pleas at law "and for defense on equitable grounds." In form they follow the Florida statute, Comp.Gen.Laws 1927, § 4301, which permits equitable defenses in a law suit. But what is more to the point the federal statute, 28 U.S.C.A. § 398, permits such defenses. If, therefore, these pleas severally present facts which make a defense either at law or in equity they should not have been stricken.

The tenth plea abbreviated is that Bennett obtained the contract from the adminis-

trators upon the intentionally false and fraudulent representation that there was an agreement between him and the deceased such as is set forth, while in truth there was none; that Bennett had been closely associated in business with deceased for fifteen years, that the administrators trusted him and believed that he would deal honestly with them, that he expressed affection for them, one being the widow of deceased and inexperienced, and the other a young man without business knowledge; that Bennett not only falsely stated the existence of the agreement but also falsely made an excessive inventory of the business, representing it to be correct, but that in fact the business was worth much less than what was due the estate; that it had not operated at a profit as he stated, but at a loss; that the jobbers' debts against it were not truly stated, but about $600 additional had to be paid them; as a result of all which Bennett had no equity in the business. In conclusion it was alleged that Bennett had deceived them to their injury, and also that the purported contract was null and void and not binding on the estate.

■■■ The demurrer to this plea objects that the Bank was not a party to the fraud and that no rescission is alleged, but the administrators have retained the benefits of the contract. It is not necessary that the Bank be privy to the fraud. While it and its assignee may enforce the promise made to Bennett for its benefit, in doing so, if nothing more appears, it enforces it as Bennett might. Its suit is subject to all the defenses connected with the contract which might be urged against Bennett. This is clearly stated in Marianna Lime Products Co. v. McKay, supra, page 280, 147 So. page 266, as follows: "Therefore, any defense which was available to Marianna Lime Products Company against its contractee * * * was also available to it against McKay, who, though he had become the real party in interest, had become so only to the extent of having a legal right to such enforcement of the contract for his benefit, as the nominal parties * * * could have enforced in their own behalf on the same covenant. The real party in interest statute, supra, is permissive, not mandatory. Its effect is not to change the contract, but to allow it to be enforced by a benefited party who is a stranger to its execution. The real party in interest would not be entitled to sue on a contract to which he is a nominal stranger but for the per-

missive effect of the statute. So a recovery by the real party in interest is a recovery on the contract itself. The right to such recovery is no greater under the statute than the contract would warrant if enforced in a suit at law between the nominal parties. The statute does not work a novation." It was held that recoupment of damages under the same contract could be used as a defense, but that the particular recoupments attempted were without merit. That the third party beneficiary's right of action on the promise cannot rise higher than the rights of the contracting party through whom he claims is again stated in Fidelity & Casualty Co. v. Plumbing Department Store, 117 Fla. 119, 157 So. 506. And this is the general law, Franklin Fire Ins. Co. v. Howard, 230 Ala. 666, 162 So. 683; 6 R.C.L. 886. See note in 81 A.L.R. p. 1292. The nominal parties may even rescind the contract without consulting the beneficiary, if the latter has not accepted it or acted on it to his detriment. Clark & Co. v. Nelson, 216 Ala. 199, 112 So. 819, 53 A.L.R. 173. The Bank and its assignee, asserting only a promise made to Bennett to pay it money as part of a purchase price due him, are met by the fact that there was no agreement by the deceased to repurchase the business, but only the fraudulent misrepresentation of one. If this be established, the contract built on this agreement falls. If the intestate did not bind himself to repurchase the business, his administrators were not only not bound but were without any authority to do so. Because of the fraud, the contract though under seal is no estoppel, for a seal will not sanctify a fraud. And certainly in equity the truth may be sought, for equity takes little or no account of seals. See Pomeroy, Eq., Jur., 4th Ed., §§ 370 and note, 379, 383, 1293. Although the administrators might in a proper proceeding be held to an account as individuals for proceeds of the goods they have sold, a judgment could not under such circumstances be rendered against the estate on the contract, as has been done. And if it should turn out that there was an agreement with the deceased and in consequence an obligation on the administrators to take back the business, there remains the fraud of a false inventory and the misstatement, whether fraudulent or by way of warranty, of the amount of the debts due jobbers. Though the contract be not rescinded but affirmed, a suit for money due under it may be defended by a recoupment of damages arising either from breach of war-

ranty. or fraudulent misrepresentation touching the same contract. Thus sufficiently appears from the cases of Dushane v. Benedict, 120 U.S. 630, 7 S.Ct. 696, 30 L.Ed. 810, a case at law, and Farrar, Adm'r, v. Churchill, 135 U.S. 609, 10 S.Ct. 771, 34 L.Ed. 246, a case in equity, and the authorities therein cited. See also Marianna Lime Products Co. v. McKay, 109 Fla. 275, 147 So. 264. If, because of a fraudulent misrepresentation of which the administrators may take advantage, they agreed to pay more than they otherwise would, or if by reason of breach of warranty as to jobbers' debts there was a loss, these matters may be recouped against a suit on the contract. They are urged only defensively; no judgment over or other affirmative relief is sought. Therefore it would seem unnecessary to make Bennett a party. In his absence the general settlement with him under the contract would stand unadjudicated. Rescission is no part of the defensive relief now under discussion. It means only that Bennett cannot collect a fraudulent price for his goods, either directly or by having his debt paid to the Bank.

■ The thirteenth plea presents the wrong inventory and valuation of the business and fixing of its debts as a mutual mistake which caused the making of the contract and without which it would not have been made. It alleges the administrators were ignorant of the business and without experience, and relied on Bennett, who put the business at $27,823 while in reality it was not worth the debts against it, so that Bennett had no equity in it, the mistake not being discovered until after attempts to sell the goods, when rescission was offered by the administrators and refused by Bennett. This plea, taken separately, presents matter for equitable relief provided no good answer can be made. It does not disclose that the goods were sold by the administrators after demanding rescission. But if this be true, and if rescission was thereby waived, a mutual mistake

in the inventory and as to the jobbers' debts if clearly proved would not be incapable of correction.

The fourteenth plea emphasizes the confidential relationship with Bennett, alleges that an inventory by disinterested persons was suggested by the administrators but that Bennett persuaded them it was unnecessary, that his inventory was recent and correct when in fact it was not correct and the value of the business was not more than $12,000 because of defects in the goods as set forth; information was withheld that ought to have been given, and ignorance and confidence on the part of the administrators and lulling by Bennett are put forward, and that the consideration received will not warrant the paying him or his appointee anything further. Since equity would disregard the seal, it may be that a case for relief based specially on fraud implied from a confidential relationship and a grossly inadequate consideration might be made under this plea though it is weaker than the others. It may well be investigated along with them.

■ In holding that these pleas ought not to have been stricken, we of course do not say that they may not be effectively replied to. We consider no facts save those pleaded in each. Appellee argues that the Bank accepted and relied on the agreement to pay it and waived rights it held against the stock of goods, and thus altered its position for the worse, Bennett being insolvent, and that the administrators having obtained and sold the goods ought not to be allowed to escape performance of the promises on the strength of which the estate in their hands was enriched. Cases like Forbes v. Thorpe, 209 Mass. 570, 95 N.E. 955, are cited. But the facts thus assumed are not yet pleaded. They must be brought forward by a reply to the pleas, and may then be given such effect as they ought to have.

The judgment is reversed and the cause remanded for further proceedings consistent herewith.