79 So.2d 793

**DARLING SHOP OF BIRMINGHAM, Inc., et al.**

v.

**NELSON REALTY COMPANY, Inc., et al.**

**NELSON REALTY COMPANY, Inc., et al.**

v.

**DARLING SHOP OF BIRMINGHAM, Inc., et al.**

6 Div. 642.

Supreme Court of Alabama.

Nov. 11, 1954.

Rehearing Denied May 12, 1955.

Cabaniss & Johnston and K. E. Cooper, Birmingham, for appellants.

Leader, Tenenbaum, Perrine & Swed-
law, Waites & Tucker, Kenneth Perrine
and John Tucker, Jr., Birmingham, for
appellees.

498

PER CURIAM.

This is an appeal from a decree of the circuit court, in equity, overruling a demurrer to a cross bill as a whole and to certain aspects of it, and sustaining the demurrer to another aspect. Cross complainant, to whom we will refer as Nelson, leased some valuable downtown store property to the Darling Shop of Birmingham, to whom we will refer as Darling. The lease was in writing, dated March 10, 1943, and extended for a term of six years beginning on the first day of February 1943 and ending at midnight on the 31st day of January 1949.

On June 11, 1948 Darling filed a bill in equity seeking a declaratory judgment in respect to certain features of the lease contract, as to which it is alleged there had arisen a controversy. That bill is not involved in the dispute now presented for consideration. It attached a copy of the lease contract. Nelson filed a cross bill seeking a declaration that Darling had forfeited its right to renew the lease under its terms for reasons there set up. The court overruled a demurrer to the cross bill as thus drafted. On appeal this Court held that the cross bill did not contain allegations sufficient to justify a holding that Darling had forfeited that right. Darling Shop of Birmingham v. Nelson Realty Co., 255 Ala. 586, 52 So.2d 211. The cross bill was thereafter amended several times and various rulings had on demurrers to it as amended. Finally it was again amended on December 31, 1952. The court rendered a decree on the demurrer on September 24, 1953. That is the decree from which Darling has appealed and assigned errors and Nelson has cross assigned errors. That situation is what is now before us for review.

That decree overruled Darling's demurrer to the cross bill as it then stood considered as a whole, and also overruled the demurrer addressed specifically to that aspect which sought "a rescission of the lease of the premises described in the bill of complaint on the ground of fraud and to have it declared that the lessee failed to renew the said lease because of its failure to tender the lessor the sum of $12,000 in advance and to recover damages for unlawfully withholding the demised premises, and also as to those aspects which set up waiver, estoppel, limitations and absence of a necessary party complainant". That decree sustained the demurrer to the cross bill "as to that aspect which seeks to have it declared that the lessee failed to renew the said lease for failure to tender the lessor the sum of $40,000.00."

Referring to that feature of the decree which overruled the demurrer to that aspect of the cross bill which sought a rescission of the lease of the premises described in the bill on the ground of fraud, it is appropriate briefly to summarize the allegations of the cross bill alleging fraud in inducing the execution of the lease by reason of which cross complainant sought to have it rescinded. In short, it is averred that at the time the written lease was executed, or shortly before then, there was an oral agreement made by Darling to modernize and merchandise the entire store including the second floor, and to incorporate those agreements in the written lease, but fraudulently failed or refused to incorporate such oral agreements in the written lease and failed to carry out the terms of said oral agreement. That Darling entered into said oral agreement with the fraudulent purpose then entertained of not carrying them out and made them for the purpose of inducing the execution of the contract by Nelson which was relied on and acted upon, thereby claiming fraud in inducing the execution of the contract.

That contention was first made by an amendment to the cross bill filed on January 9, 1952 by adding paragraphs seventeen, eighteen and nineteen to the cross bill. Prior to that time the cross bill had sought a declaration that Darling had forfeited its right *to a renewal* of the lease under its terms on account of said fraud.

With reference to that aspect of the cross bill which sought to have a declaration that Darling failed to renew said lease because of its failure to tender to the lessor the sum of $12,000 as a feature of the renewal, and with respect to that aspect to which the demurrer was sustained which sought to have a declaration that the lessee did not renew said lease for a failure to tender to the lessor the sum of $40,000 it is necessary to review some features of the lease and the allegations of the cross bill with respect to them. Paragraph numbered "Twenty-ninth" of the lease provides that Darling shall have the option to renew the lease for a further term of five years upon the same terms and conditions, except that the annual minimum rental during said additional term shall be the sum of $30,000; and that "such option of renewal shall be exercised by notice in writing by registered mail addressed to the landlord on or before August 1, 1948". The cross bill as last amended December 31, 1952, alleged that Darling had sent a letter to Nelson dated July 23, 1948 declaring its exercise of the option to renew. The rental provided in the lease, (paragraph "one") was a sum equal to six percent of the gross annual sales. It then, in paragraph "second", made provision for a minimum amount for the first year of $23,000 increased from time to time until the sixth year of the lease when the minimum was $29,100. The "ninth" paragraph of the lease was as follows:

"In consideration of the loan of Forty Thousand ($40,000.00) Dollars, and other valuable consideration, including the assistance rendered by the tenant to the landlord in the redemption of said demised property from foreclosure, the landlord has agreed to pay to the tenant, out of the overages yielded under this lease, the sum of Twelve Thousand ($12,000.00) Dollars, provided, however, that such sum shall not be payable to the tenant until and unless the said loan of Forty Thousand ($40,000.00) has been paid in full out of the overages yielded during the first six (6) years of the term of this lease; it being the intention of the parties that only the overages earned during the first six (6) years of the term over and above the amount required to fully liquidate the loan of Forty Thousand ($40,000.00) Dollars shall be applied in payment of said sum of Twelve Thousand ($12,000.00) Dollars. In the event that the overages yielded during the first six (6) years of the term are insufficient first to fully discharge the loan of Forty Thousand ($40,000.00) Dollars and then the said sum of Twelve Thousand ($12,000.00) Dollars, the balance then due and owing on account of said sum of Twelve Thousand ($12,000.00) Dollars shall be fully discharged, released and cancelled".

Section 19 of the cross bill as amended January 9, 1952 contains the following:

"The Prudential Insurance Company of America has a mortgage upon said premises and that the rents from said premises are assigned to The Prudential Insurance Company of America as security for said mortgage".

Paragraph number "Twenty-seventh" of the lease is as follows:

"The minimum rentals hereinabove set forth, except the additional minimum rental referred to in Paragraph 'Seventh' hereof, shall be paid by the tenant to The Prudential Insurance Company of America, to which the landlord has contemporaneously herewith assigned said minimum rentals, until such time as The Prudential Insurance Company of America shall notify the tenant in writing that it may pay said minimum rentals as directed by the landlord."

The cross bill as amended December 31, 1952, expressed the view that in order to

exercise the option to renew said lease as stipulated in it, it is necessary for Darling "to tender to the landlord a loan of $40,-000.00 to be repaid over the term of the lease out of overages due by the tenant to the landlord and to tender to the landlord the sum of $12,000.00 which under the terms of the original lease was guaranteed to the landlord as additional percentage rent upon said premises irrespective of the amount of the overages earned during the term of said lease". And that Darling failed to make a tender of either of said amounts, and that there was a failure by Darling "to offer to exercise its option to renew said lease under the same terms and conditions and did fail to exercise its option to renew said lease under the same terms and conditions". Therefore, the cross bill sought to have a declaration that on account of such failure Darling did not effectually exercise its option to renew the lease under its terms. Said cross bill alleged that on that account the possession by Darling of said property after January 31, 1949 was unlawful and that it was accountable for damages resulting from holding over subsequent to that date and sought a personal judgment against Darling for the amount of the same.

It is not clear just what is meant in the decree of September 24, 1953 by that feature which overrules the demurrer "to those aspects which set up waiver, estoppel, limitations and absence of a necessary party complainant".

■ The lease itself, as we have shown, provides that the amount of such minimum rental shall be paid to Prudential. That being the agreement of both parties to the lease, it amounted to an effectual splitting up of the total amount of the stipulated rental. Kansas City, Memphis and Birmingham R. R. Co. v. Robertson, 109 Ala. 296, 19 So. 432; First National Bank v. Murphree, 218 Ala. 221(4), 118 So. 404. By it Prudential's right was firmly fixed both at law and in equity. The assignment of the lease to Prudential confirmed that right. It did not serve to enlarge the amount of Prudential's interest in the lease other than as stipulated because other features of the lease made provision for disposing of the overages above the minimum payable to Prudential. Under the terms of the Lease, Darling having made two advancements to Nelson aggregating $52,000, all overages (above the minimum) up to that total were to be retained by Darling as credits on them.

So that unless the overages exceeded $52,000 for the first term of six years, Nelson was not to be paid any further sum on account of the stipulated rentals for that period. But out of the total Prudential was to receive the amount of the minimum, and Darling was to retain the amount of the overages but not exceeding the amount of the advancements.

With that situation in mind, Nelson is seeking to have annulled and rescinded the lease as of its date or, if mistaken in that, to have a declaration that the lease was not renewed and, therefore, is now ineffective, and to recover for the use and occupation of the property while so occupied.

The effect of that result would be to adjudge that Prudential did not properly receive and hold through the years the stipulated minimum and other benefits of the lease as collateral security and could not in the future accept the benefit of the further renewals as provided for in the lease. Prudential as assignee of the amount of minimum rentals succeeded to the rights of the assignor in that respect. Section 10, Title 31, Code.

■ Prudential has the further status of a mortgagee of the premises leased. In the absence of stipulation to the contrary, it is entitled as mortgagee to the possession and the rents and profits before as well as after the law day when claimed. Woodward v. Parsons, 59 Ala. 625; Coffey v. Hunt, 75 Ala. 236; American Freehold Land Mortgage Co. v. Turner, 95 Ala. 272(3), 11 So. 211; Cowart v. Aaron, 220 Ala. 35(3), 123 So. 229.

■ If the status of Prudential were no more than that of a third party beneficiary of the lease and had not changed its position in that respect and there was no

·other consideration, or it did not also acquire a vested interest, the landlord and tenant could make any change mutually agreeable, or could rescind and cancel the lease. John F. Clark & Co. v. Nelson, 216 Ala. 199(4), 112 So. 819, 53 A.L.R. 173, annotation page 178; Copeland v. Beard, 217 Ala. 216, 115 So. 389; Franklin Fire Ins. Co. v. Howard, 230 Ala. 666, 162 So. 683. Under those circumstances either could maintain a suit against the other for a rescission when the facts justify it without the third party consenting. Carver v. Eads, 65 Ala. 190; Pugh, Stone & Co. v. Barnes, 108 Ala. 167, 19 So. 370; Georgia Home Ins. Co. v. Boykin, 137 Ala. 350, 34 So. 1012.

 But there was an effectual assignment of the lease as collateral security for a debt, to the extent of a definite portion of the amount of the rents agreed on. That conferred a right, not a mere privilege which a third party beneficiary has. When a collateral is duly assigned as security for a debt the collateral holder has the title to it, which the transferor cannot abridge. The transferor has the equity of redemption, but that is the only interest he has except as otherwise stipulated. Without the consent of the pledgee his only authority and power over the collateral, to the extent that it is thus pledged with the title passing to the pledgee, is to pay the debt he owes and then the collateral is reinvested in him and he can enforce it. That is the status of Nelson toward Prudential, except as stipulated in the assignment. Nelson cannot do anything to injure the rights of Prudential to the extent that they were assigned to it. 6 C.J.S., Assignments, § 101, p. 1158; 5 Corpus Juris 968, section 157; 4 Am.Jur. 312, section 105; Franzen v. G. R. Kinney Co., 218 Wis. 53, 259 N.W. 850, 105 A.L.R. 740; Mercantile & Theatre Properties, Inc., etc. v. Stanley Co., 346 Pa. 343, 30 A.2d 136; Lauderdale County Co-Operative v. Lansdell, 260 Ala. 452, 71 So.2d 70, 75(10); Kelly v. Carmichael, 217 Ala. 534(8–9), 117 So. 67; Oden-Elliott Lumber Co. v. Butler County Bank, 213 Ala. 84, 104 So. 3; Coats v. Mutual Alliance Trust Co., 174 Ala. 565, 56 So.

915; Alabama Terminal & Improvement Co. v. Knox, 115 Ala. 567, 21 So. 495.

If Nelson succeeded in cancelling the lease or its renewal without the consent of Prudential, that principle would be violated.

 But it is insisted that this principle does not here apply because the written assignment executed by Nelson to Prudential contains provisions to the contrary. In the first place, this assignment is not a part of the cross bill nor the original bill but only an exhibit to the answer of Prudential to the original bill. But if it be treated as a feature of the cross bill so that on the demurrer to the cross bill it may be considered as containing such assignment, there would be no difference in the result. The assignment provides that the owner (Nelson) assigns, transfers and sets over unto Prudential the said lease as additional security and covenants that it will not, without the written consent of Prudential (a) cancel the lease, (b) accept surrender thereof, (c) reduce the rent, (d) modify said lease in any way, either orally or in writing, (e) grant any concession in connection with this lease either orally or in writing, (f) consent to an assignment of the lessee's interest in said lease or to a subletting. "And any of the above acts, if done without the written consent of Prudential shall be null and void." It also provides that until there is a default in complying with the covenants of the mortgage Nelson shall have the right to collect and enjoy the rents payable under the lease, and upon the happening of any default Prudential may at its option receive and collect all the rents, issues and profits.

Those provisions in some respects modify the legal relations of a pledgor and pledgee of the lease. The mortgage is payable in installments and the rents are likewise so payable, and the assignment expressed a consent for the lessor to collect the rents as they should fall due so long as there is no default. But that does not in any respect diminish the vested interest of Prudential in the lease as it is written. Prudential is only to have the minimum rentals

as they are payable. But the assignment to it was as security for the debt and as long as there is no default it is not in derogation of Prudential's vested rights as collateral holder of the lease to stipulate that the accruing minimum rentals may be collected by Nelson. Mercantile & Theatre Properties Inc., etc. v. Stanley Co., supra. In the same instrument Nelson agreed in effect not to do anything to cut off the rights of Prudential in the corpus of the lease. That was in accord with the law applicable to that situation. The stipulation permitting Nelson to collect on the named contingency, notwithstanding the assignment did not confer on Nelson the right to modify the lease or to take steps to cancel it in contravention both of the assignment itself and the law in respect thereto.

It should be observed that the instrument of assignment to Prudential warrants that said lease is in full force and effect according to its original terms. This could not be so if it were subject to be annulled as of the date of its execution on account of fraud as an inducement to its execution. To grant such relief to Nelson without the consent of Prudential would violate the terms of that clause. If the lease is not subject to be cancelled for such alleged fraud, the option to renew stands as a part of it.

■■■ But Nelson is not required to stand by and permit Prudential to have the benefit of an attempt to renew the lease *contrary to its terms* without the consent of Nelson. He has made Prudential a party to the cross bill which seeks a declaration as to whether Darling by its notice to him complied with the requirements of the lease to effect such renewal. We have shown that paragraph Twenty-Ninth contains the following stipulation in that respect: "Such option of renewal shall be exercised by notice in writing by registered mail addressed to the landlord on or before August 1st, 1948". The notice which Darling claims is a compliance with it was given July 23, 1948. Nelson's answer to the notice made no objection to the contents of the notice or the failure to tender a loan of $40,000 or an advance of $12,000.

A renewal of the lease on notice, upon the same terms and conditions does not require the tender of another loan of $40,000 payable as before and a tender of another advance of $12,000 payable only out of the excess overages. It would not be necessary for the notice, by which the option to renew is exercised, to specify the terms and conditions to be effective on the renewal. The lease did not prescribe the form of notice.

The present situation is subject to the comment made on former appeal, 255 Ala. 586, at page 591, 52 So.2d 211, at page 215 that "generally where a covenant to renew a lease is not by its terms made expressly dependent upon performance by the lessee of other covenants and conditions in the lease, a breach of such other covenants. will not in and of itself affect the right of lessee to insist upon his renewal privilege." It is only necessary here to observe that if we assume the lease provides that upon renewal Darling is obligated to make the advancements referred to, it is not necessary for him to make a tender or offer to do so in the notice by which he exercises the option to renew. But we do not now undertake to construe the lease in respect. to that obligation effective after the renewal has been accomplished. If Nelson wishes to have the benefit of that covenant he should call upon Darling to comply with. it, and upon Darling's refusal to do so,. Nelson can pursue his appropriate remedies. But Nelson is here claiming that the renewal was not effectual because a tender was not made.

It is apparent that Nelson's effort is not to obtain the benefit of the provisions of the lease in order to secure the advances. specified, but to obtain a declaration that the renewal was not effective because of a. failure to make a tender. That is not a condition to renewal any more than the obligations referred to on former appeal.. Gadsden Bowling Center v. Frank, 249 Ala. 435, 31 So.2d 648, 172 A.L.R. 1430. Cf.. 35 Corpus Juris 1018, section 145; 51 C. J.S., Landlord and Tenant, § 82, p. 642; Ashurst v. Peck, 101 Ala. 499, 509, 14 So. 541; Zirkle v. Ball, 171 Ala. 568, 54 So.. 1000.

We observe that the cross bill seeks a declaration in respect to the renewal claimed by Darling, and the question is presented by a demurrer to the cross bill. We referred on former appeal to our custom when an appeal is taken from a decree on demurrer not to pass on the merits of a justiciable controversy set up in a bill seeking a declaration under the statute, section 156, Title 7, Code, but that we will sometimes in our discretion do so when both parties assert rights dependent upon an interpretation of the facts alleged, and a question of law is presented and both parties argue the merits of it on that basis. In some aspects the cross bill seeks more than a declaration but affirmative relief on the assertion of a claim which is recognized in equity.

As on former appeal, we thought it advisable to discuss the questions raised on this appeal and we have done so.

The result is that the demurrer should be sustained to that aspect of the cross bill which seeks to cancel the lease for fraud in its inducement without alleging that Prudential has consented thereto. The demurrer should be sustained to that aspect of the cross bill which seeks a declaration that Darling failed to renew the lease for that there was a failure to tender to Nelson $12,000 as an advance. But it was properly sustained to that aspect which sought a declaration that there was a failure to renew because Darling did not tender to Nelson a loan of $40,000.

The cause should be affirmed in part, reversed in part and remanded.

The foregoing opinion was prepared by Foster, Supernumerary Justice of this Court, while serving on it at the request of the Chief Justice under authority of Title 13, section 32, Code, and was adopted by the Court as its opinion.

Affirmed in part, reversed in part and remanded.

LIVINGSTON, C. J., and LAWSON, SIMPSON and CLAYTON, JJ., concur.

On Application for Rehearing.

Application for rehearing overruled.

LIVINGSTON, C. J., and LAWSON, STAKELY, MERRILL and MAYFIELD, JJ., concur.

SIMPSON, J., dissents.

GOODWYN, J., not sitting.

SIMPSON, Justice (dissenting).

Whatever might be the merit of the legal discussion embraced in the opinion of the court on original deliverance, it would seem to be purely academic in so far as the issues presented by this appeal are concerned. The decision is primarily based on an assignment of the lease by Nelson to Prudential. Though the pleadings in this case are rather confused and repetitious, as best I can tell there is no averment or admission in the cross bill that the lease had in fact been assigned. True, such an assignment does appear in the record as an exhibit in the answer of Prudential, but this does not detract from the sufficiency of the cross bill as against the asserted demurrer. True also, the cross bill alleges that the rents from the lease have been assigned but this is entirely different from an assignment of the lease itself, as the assignments of the rents alone does not affect the equities between lessor and lessee. 51 C.J.S., Landlord & Tenant, § 259, p. 901.

An aspect of the cross bill as last amended seeks the cancellation of the lease on the ground of fraud in its inception. The fraud allegedly consisted in the representations or promises on the part of the lessee to modernize the premises and to merchandise the entire premises when materials permitted. It is alleged that this was a material inducement of the contract and that Darling had no intention of living up to these promises or representations at the time they were made and that he breached this agreement. There can be no question, of course, but that a promise made with no intention of performance may be a misrepresentation of a subsisting fact and

504

if material and relied on as an inducement to the contract constitutes fraud. Williams v. Williams, 238 Ala. 637, 193 So. 167.

But it is argued that in this case the lease embodied the whole agreement between the parties and the prior oral understanding between the parties cannot be shown. A written contract does not estop the parties from showing fraud in the inducement. "The law does not countenance a contract against the consequences of fraud." Alabama Machinery & Supply Co. v. Caffey, 213 Ala. 260, 104 So. 509, 511. Furthermore, the "promises" in this case are in reality statements of facts as to the intended use and manner of occupation of the premises. See 17 C.J.S., Contracts, § 157; Norm Co. v. City Drug Stores, Tex. Civ.App., 59 S.W.2d 270; Old Colony Trust Co. v. Dubuque Light & Traction Co., C.C., 89 F. 794. It is my view, therefore, that, under the allegations of the cross bill, the landlord is entitled to an opportunity to present the proof and have a determination of rights as to this aspect.

On the prior consideration of this case, it was held that the mere nonperformance of the terms of the lease by the lessee did not warrant a cancellation of the lease (255 Ala. 586, 52 So.2d 211). The cross bill now before us, however, alleges not only nonperformance but the stated fraud, supra, on the part of the lessee which if true would warrant a cancellation of the option to renew. Shell Petroleum Corp. v. Gowan, 240 Ala. 497, 199 So. 849. Demurrers to this aspect of the bill should have been overruled.

The third aspect of the bill sought a declaration that the lease had never been renewed due to the failure of the lessee to tender to the landlord another $40,000 loan and a $12,000 advance. As I see it, the grounds of demurrer attacking this aspect of the bill should have been overruled, since it cannot be said as a matter of law that transactions concerning these items were or were not terms or conditions of the lease and should have been repeated as a part of the renewal. Nor can it be said that, on demurrer, the tender of these amounts was or was not necessary to per-

fect a renewal even if they were terms and conditions of the lease. It seems to me, therefore, that this aspect of the cross bill alleges a sufficient justiciable controversy to entitle the landlord to a declaration of rights under the renewal clause.

I therefore respectfully dissent.