FAULKNER, Justice.
These consolidated actions center around the termination of a lease to a nursing home by the lessor, the Second Medical Clinic Board of the City of Prichard (Board), without the prior written consent of the Trustee, Exchange Security Bank. The lessee, Kingridge, Inc. (Kingridge) filed suits to acquire possession of the nursing home along with damages and to cancel its assignment of the lease to Bettercare Management Group, Inc. (Bettercare). Better-care also sued for possession of the nursing home plus damages. The Board counterclaimed for recovery of $52,000 allegedly misappropriated by King, president of King-ridge; and Bettercare counterclaimed for money damages. The trial court held that the termination was proper and denied all money damages claimed by the parties. We affirm.
King entered into an agreement with the City of Prichard for the construction of a nursing home in Eight Mile, Alabama. The City of Prichard appointed the Board, and undertook to finance the construction of the project with the issuance of bonds pursuant to Title 37, § 853, et seq., Code (1973 Supp.). King transferred his option on the property to the Board and incorporated the non-profit corporation, Kingridge, to acquire the lease of the nursing home. On November 1, 1971, Kingridge and the Board entered into a lease agreement, and a mortgage indenture and deed of trust was entered into between the Board and the Trustee on the same day.
Because of inability to meet the operating capital requirements, Kingridge assigned the lease to Bettercare. The assignment was signed on March 5, 1973, but there is testimony that the assignment was not delivered to Bettercare until March 19.
Kingridge defaulted on the lease by nonpayment of rent and insurance as well as other grounds of default set out in the lease agreement. Although Bettercare indicated that it was ready and able to supply the operating capital, this has never been done. On March 19 the Board cancelled the King-ridge lease. It is undisputed that the Trustee had given no verbal or written consent to the termination at that time. The nursing home was leased to Koinonia, Inc. (Koinonia) by the Board in June: This second lease to the nursing home was prepared by an attorney of the Trustee. The principal officer in charge of the bonds testified that he was aware that the lease was being prepared.
The first case involved in this appeal, Kingridge, Inc. v. Bettercare Management Group, Inc., et al. (Case No. 86,7000) was filed on May 23, 1973. On April 26, 1974, Bettercare’s motion to dismiss was granted, and Kingridge was given thirty days to amend. No amendment was made within *1003 that time. On October 4, Kingridge filed a motion for leave to amend, to add new parties and to consolidate the action. On January 7, 1975, the motion to amend and add new parties was granted, allowing the addition of the Board and Koinonia as defendants. On March 3 the court consolidated this action with a second case, Bettercare Management Group, Inc. v. The Second Medical Clinic Board of the City of Prichard and Koinonia, Inc. (Case No. 44,235), filed on May 3, 1974. Apparently another suit filed by Kingridge against Bettercare, the Board and Koinonia (Case No. 47,097) in 1973 was dismissed for failure to prosecute in the same year.
After a hearing ore tenus, the trial court found:
“. . . that the lease agreement between Board, as Lessor, and Kingridge, as Lessee, was validly and legally terminated, on March 19, 1973 and further the Court finds that no parties in the consolidated action are entitled to recover money damages and the Court further finds that the ejectment suit of Bettercare is due to be denied and therefore, the Court having determined that the lease agreement between Board, as Lessor and Kin-gridge, as Lessee, was validly and legally terminated, the Court need make no decision as to the validity of the assignment of lease from Kingridge to Bettercare.”
From the trial court’s decree that the lease agreement was validly terminated on March 19, 1973, denying Bettercare’s ejectment suit, its claim for money damages and its counterclaim for money damages, denying the relief sought by Kingridge, and denying the relief sought by the Board in its counterclaim, Kingridge and Bettercare appeal. The Board and Koinonia cross-appeal. The cases were consolidated for the purposes of appeal. The issues presented for review are:
(1)Whether Kingridge’s motion for leave to amend was properly granted where the original complaint in that ease had been dismissed and where no amendment had been made within thirty days as provided in the order of dismissal.
(2) Whether the lease could be terminated by the Board without the prior written consent of the Trustee.
(3) Whether the trial court erred in denying the Board’s counterclaim to recover $52,000, allegedly misappropriated by Mr. King.
(4) Whether the trial court erred in denying Bettercare’s ejectment action against the Board and Koinonia where the assignment was delivered on March 19, 1973.
I
We hold that the trial court did not err by permitting Kingridge to add the Board and Koinonia as defendants even though the original complaint had been dismissed with leave to amend within 30 days but no amendment was filed within that time. Rule 15 ARCP provides that amendments shall be freely allowed when justice so requires.
“. . . [I]f Rule 15 is to be of any benefit to the bench, bar, and the public, the trial judges must be given discretion to allow or refuse amendments. However, we state that amendments are to be freely allowed and refusal of an amendment must be based on a valid ground. We state also that Rule 15 must be liberally construed by the trial judges.” Ex Parte Stead, 294 Ala. 3, 6, 310 So.2d 469, 471 (1975).
McElrath v. Consolidated Pipe & Supply Co., 351 So.2d 560 (Ala.1977). Furthermore, Rule 21, ARCP states that “[pjarties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just.”
II
Appellants contend that the trial court erred in finding a valid termination of the Kingridge lease because the Board failed to obtain the Trustee’s prior written consent. They rely on the following lease provision:
“Subsequent to the issuance of the Bonds and prior to their payment in full, *1004 the Board and the Lessee shall have no power to modify, alter, amend or terminate This Agreement without the prior written consent of the Trustee and then only as provided in the Indenture; provided, that the Board and the Lessee may, without any such consent, make such modifications, alterations and amendments of This Agreement as are specifically authorized in or contemplated by This Agreement or the Indenture.”
The following article of the lease sets out events of default and remedies, specifically setting out the course taken by the Board as one of the remedies on default:
“Whenever any such event of default shall have happened and be continuing, the Board or the Trustee may take any of the following remedial steps:
U * * *
“(b) The Board or the Trustee may terminate This Agreement, exclude the Lessee from possession of the Project and lease the same for the account of the Board and the Trustee . . . ”
It is undisputed that the bonds were outstanding at the time of the attempted termination; and, while Kingridge contends that the defaults were “technical,” it nevertheless admits that it was in default.
Appellees argue that the remedies on default are “specifically authorized in or contemplated by the lease” and, therefore, operate as an exception to the consent requirement. While the lease read alone may be subject to such an interpretation, a reading of the lease and Indenture together mandate a contrary conclusion. Section 9.3 of the Indenture states:
“The Board will not cancel, terminate or modify, or consent to the cancellation, termination or modification of, the Assigned Lease (except as is specifically provided, authorized or contemplated therein or herein) unless and until the principal of and the interest on the Bonds shall have been paid in full . . .; provided however, that with the written consent of the Trustee, the Board may terminate the Assigned Lease under those provisions thereof authorizing such termination upon default of the Company. In the event of any such default, or in the event of a default on the part of the lessee under any other lease entered into by the Board with respect to the Project or any part thereof, the Board will exhaust or cause to be exhausted, as promptly as may be practicable, all legal remedies that it may have against the defaulting lessee to obtain compliance with the lease provisions, including payment of the rentals therein provided and performance and observance of all agreements and covenants on the part of the lessee therein contained, but will not effect termination of the Assigned Lease without the aforesaid consent of the Trustee.” (Emphasis added.)
It is plain that the parties contemplated that termination of the lease could be effectuated only with the consent of the Trustee. Without such consent, the Board was without any power to terminate the lease agreement. Darling Shop v. Nelson Realty Co., Inc., 262 Ala. 495, 79 So.2d 793 (1954).
The language of both the lease and the Indenture, however, clearly indicates that the consent provision is for the benefit of the Trustee. A provision may be waived by the conduct of the party for whose benefit the provision is made. See Thompson v. Thompson, 257 Ala. 10, 57 So.2d 393 (1952). Here an attorney for the Trustee drafted the lease to Koinonia. There was also testimony that the principal officer in charge of the bonds was aware that a new lease was being drafted, and in fact, had forwarded the letter requesting that a new lease be drafted to the attorney. These facts are sufficient to justify a finding that the Trustee waived the consent requirement so that the lease was validly terminated on March 19, 1973. A reviewing court will assume that the trial court made those findings which the evidence supports and will justify the decree rendered. Orton v. Gay, 285 Ala. 270, 231 So.2d 305 (1970).
Ill
The trial court did not err in denying the Board’s .counterclaim to recover *1005 $52,000 that they contend King misappropriated. King admits receiving this money and stated at trial that part of it was reimbursement for out-of-pocket expenses and the remainder was paid to him as salary for his services as a supervisor of the project. The Board presented evidence that $12,000 was designated on the bond disbursement sheet as being reimbursement for architect fees though King had never paid this money to the architects. As to the amount King claims as salary, the Board presented evidence showing that King was not qualified to perform the job, that he did not do the job, and that a qualified supervisor could have been hired to do the job at half the salary.
The trial court heard the evidence ore tenus and held that the Board was not entitled to recover any money damages. Where the trial court makes a decree after hearing witnesses ore tenus, every presumption will be indulged in favor of the trial court and its finding will not be disturbed on appeal unless palpably wrong. Shivers v. Shivers, 277 Ala. 400, 171 So.2d 109 (1965). After reviewing the evidence, we are satisfied that the trial court was not palpably wrong in its decree.
IV
Nor was there error in the trial court’s denying Bettercare’s ejectment action against the Board and Koinonia. “In order to become effectual, an assignment of a leasehold ordinarily must be delivered and accepted . . . ” 51C G.J.S. Landlord & Tenant § 40d, p. 118. The assignee of the lessee admitted that the assignment was not delivered until March 19, 1973, the date the Kingridge lease was terminated by the Board. The trial court’s finding that the Kingridge lease had been validly terminated prior to the assignment becoming effective is supported by the evidence and, therefore, will not be disturbed on appeal. Shivers.
AFFIRMED.
TORBERT, C. J., and BLOODWORTH, ALMON and EMBRY, JJ.,- concur.